**Dorian Lugo RUBIO, etc., et al.,**
**Plaintiffs,**

v.

**SOUTHERN AIR TRANSPORT,**
**INC., Defendant.**

**Civ. No. 790–71.**

United States District Court,
D. Puerto Rico.

Jan. 22, 1975.

## OPINION AND ORDER

PESQUERA, District Judge.

On October 23, 1970, Dr. Dorian Lugo Rubio, a licensed doctor in veterinary medicine and dairy farmer, climbed on top a ramp that was about to be used to unload cattle from an aircraft. The aircraft had just arrived to International Airport at Isla Verde, Puerto Rico, and Dr. Lugo Rubio, as an employee of the Department of Agriculture of the Commonwealth of Puerto Rico, upon receiving the request of the air carrier to do so, was to inspect the cattle being imported into Puerto Rico. The ramp, used to unload cattle directly from the aircraft into the platform of waiting trucks, was four or five feet high from the runway.

In order to climb, Dr. Lugo Rubio placed his foot in a border, about an inch wide, that protruded from the ramp. He pulled himself up and as he turned on his knee he felt a pain. Later on, it was found that Dr. Lugo Rubio had a ruptured medial meniscus that had to be removed by surgery on his left knee. Dr. Lugo Rubio brought the instant action to recover compensatory damages for his injury claiming that it was caused by the negligence of the air carrier Southern Air Transport, Inc., owner and operator of the aircraft.

Southern Air Transport took the deposition of Dr. Lugo Rubio and based upon said deposition, filed a summary judgment motion. Both parties filed their respective memoranda and their arguments were received in open court. After being fully advised on the premises, and after considering Dr. Lugo Rubio's deposition in the light most favorably to him, the Court finds in favor of Southern Air Transport, Inc., grants its motion for summary judgment and dismisses the complaint.

Southern Air Transport's position is well taken. Even if Dr. Lugo Rubio's version of the occurrence, as it appears from his deposition, is accepted, Southern Air Transport is entitled to a

Roberto J. Matos, Hato Rey, P. R., for plaintiffs.

Hartzell, Ydrach, Mellado, Santiago, Pérez & Novas, José L. Novas Dueño, San Juan, P. R., for defendant.

judgment in its favor as a matter of law. Dr. Lugo Rubio failed to show any negligent act or omission on the part of Southern Air Transport that can be described as a cause of the alleged accident.

The most that can be said in this case against Southern Air Transport is that at the time Dr. Lugo Rubio, on his own, and without being required by Southern to do so, chose to go on board the aircraft, there were no means for persons to board from the runway into the cargo section of the aircraft. The only way in was the cattle ramp, which in fact was a way out designed and intended not as an access by humans but as an unloading system for cattle. The true and clear intended use of the ramp must have been obvious to all, and more so to a veterinarian employed at an airport for the inspection of cattle and other animals.

The ramp was omitted to be without any defect, obstruction and was properly installed and cared for. The occurrence was the sole and exclusive result of Dr. Lugo Rubio's decision to use a cattle ramp, four or five feet high from the runway, to board the aircraft. He had full knowledge of the difficulty involved and was in position of assessing the risk involved in climbing four feet the way he did.

The Supreme Court of Puerto Rico in Torres v. Metropolitan School, 91 P.R.R. 1 (1964) found occasion to summarize the local cases dealing with stairs and means of access as follows:

"The case law in this jurisdiction cited by the trial court in support of its findings is not applicable or is clearly distinguishable. In Goose v. Hilton Hotels, 79 P.R.R. 494 (1956), the circumstances were very different, since the stairway was almost twice as wide; the steps had smooth nosing on the edge and were wet, and at the time of the accident it was being used by other persons in addition to the plaintiff, so that it was evident that he had no opportunity to protect himself with the only handrail available, a circumstance which does not arise from the evidence in this case. It was further concluded that the 3-inch nosing of smooth cement on the edge of each step constituted a trap for a 50-year old guest such as plaintiff in that case, because of the fact that it was always wet. Subsequently, a second handrail was installed and the stairs were covered with rubber matting. In Ramirez v. Hotel Condado, 68 P.R.R. 880 (1948), the accident was due to a defect in one of the steps of a stairway. It was conceded that the stairway was defective. In Prado v. Quiñones, 78 P.R.R. 309 (1955), the accident was due to the fact that a plank which served as provisional passage while certain repairs were being made moved abruptly, because it was loose, as plaintiff walked over it, causing her to lose her balance and to fall.

"In Ramos v. Carlo, 85 P.R.R. 337 (1962), the accident was due to some metal straps which defendant was placing on a sidewalk. In Cole v. Escambrón Development Co., 73 P.R. R. 477 (1952), the accident was caused by the collapse of the floor of a dancing hall the beams of which, that supported the platform of the floor, were in an advanced state of deterioration so that they were a menace because they could not furnish adequate support to the platform. In the case under consideration it is evident that the stairway did not have any defect such as that which occasioned the accident in *Goose*, supra, *Ramirez*, supra, *Prado*, supra, and *Cole*, supra, and that that stairway was not obstructed by any object unduly placed on it by one of appellants, as was the case in *Ramos*, supra."

*Torres*, supra, at pages 7 and 8.

The ramp here under consideration had no defect or obstruction and was in no way inherently dangerous when properly used for its intended purpose. All the cases cited by the plaintiffs are inapposite. Reliance by plaintiffs in Goose v. Hilton Hotels, 79 P.R.R. 494 (1956) is of no avail. *Goose* used a stair which was dangerous but provided

and intended for its use. Quite differently, in the instant case Dr. Lugo Rubio used to enter an aircraft a cattle ramp not dangerous per se and not provided nor intended or designed for use by humans as a means of boarding the aircraft. Dr. Lugo Rubio did not attempt to enter the aircraft invited by Southern Air Transport. He attempted to enter prompted by the consignee of the cattle and before he was requested to inspect the cattle by Southern Air Transport.

Finally, the circumstances of this case justify the use of the doctrine of assumption of risk. Thus, aside from the complete absence of negligence causally related to the occurrence, it appears that Dr. Lugo Rubio, with full knowledge of risks involved, climbed a ramp four feet high. This act involved some danger to him, to which danger he voluntarily exposed himself. This brings into play the doctrine of assumption of risk.

In Echevarría v. Despiau, 72 P. R.R. 442 (1951), the Supreme Court of Puerto Rico adopted the rule, and citing Professor Prosser, found the doctrine applicable to situations where the plaintiff, with full knowledge of the risk, enters into a relation with the defendant involving danger to himself. In such situations the plaintiff is said to act at his own risk and the defendant is relieved of liability. The doctrine is clearly applicable to the instant case. Dr. Lugo Rubio, with full knowledge of the risk, attempted to enter Southern Air Transport's aircraft in a way that involved danger to himself. He did so at his own risk and now he cannot blame the defendant.

In some cases the doctrine of assumption of risk does not afford a complete defense but is considered as a factor in determining comparative negligence. However, in the instant case, where the cattle ramp was free of defects or obstruction and was properly installed and taken care of, there is no breach of duty by the defendant, and assumption of risk is a complete defense. This is the primary sense of the assumption of risk concept, recognized by the Supreme Court of Puerto Rico in Viñas v. Pueblo Supermarket, 86 P.R.R. 31 (1962), and Colón v. Municipio de Orocovis, 100 D.P.R. 1009, 100 P.R.R. —— (1972). The doctrine of assumption of risk is applicable to the instant case in its primary sense.

Defendant's motion for summary judgment is granted, and plaintiffs' complaint is dismissed.