ROY W. RILEY *vs.* DAVISON CONSTRUCTION CO., INC.
& another.

Plymouth. May 5, 1980. — September 2, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Negligence,* Assumption of risk. *Statute,* Construction. *Practice, Civil,*
Default, Mistrial, Special verdict. *Pleading, Civil,* Answer.

Statute 1969, c. 761, the comparative negligence statute, did not abolish
assumption of the risk as a complete defense to a negligence action.
[434-441]
The judge in a civil action did not abuse his discretion in refusing to enter
default against a defendant who did not file an answer to the plaintiff's
declaration where the plaintiff did not move for default until after the
trial had begun and where the defendant, while it did not formally
answer, did "otherwise defend" within the meaning of Mass.R.Civ.P.
55(a). [441-442]
The judge at the trial of a negligence action did not abuse his discretion
in entering a judgment for a defendant on the defense of assumption of
the risk even though the defendant had not filed an answer and only
asserted the defense in its opening where the plaintiff was not preju-
diced by the dilatory pleading because the other defendant had filed a
timely answer pleading assumption of the risk. [442]
The judge at the trial of a negligence action did not abuse his discretion in
denying the plaintiff's motion for a mistrial on the basis that the jury
violated the court's instructions regarding the order in which the
interrogatories contained in the special verdict slip were to be
answered and did not answer the proximate cause questions contained
in the special verdict slip where the jury's affirmative answer to
whether the plaintiff assumed the risk rendered the proximate cause
issue immaterial. [442-446]

TORT. Writ in the Superior Court dated September 5, 1973.
The action was tried before *Umana,* J., a Municipal
Court judge sitting under statutory authority.
The Supreme Judicial Court granted a request for direct
appellate review.

*Frederic N. Halstrom* for the plaintiff.

*Stephen T. Keefe, Jr.*, for Davison Construction Co., Inc.

*Ann-Louise Levine* for Standard Contracting Co., Inc.

HENNESSEY, C.J.  The plaintiff commenced this suit for damages under a negligence theory pursuant to G. L. c. 152, § 15, by writ dated September 5, 1973, in the Superior Court, Plymouth County, against Davison Construction Co., Inc. (Davison), and Standard Contracting Co., Inc. (Standard).  Trial commenced on June 12, 1978. The judge submitted the case against both defendants to the jury on special questions.  Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974).  Thereafter, based upon the jury's answers to the special questions, the judge ordered entry of judgment for both defendants.

The plaintiff appealed and direct appellate review to this court was allowed.  The plaintiff raises the following issues in this court:  (1) whether assumption of the risk is a complete defense to an action for injuries sustained on December 5, 1972;[1] (2) whether the trial judge erred in denying the plaintiff's motion for default judgment against Standard; (3) whether the trial judge abused his discretion or committed an error of law in allowing Standard to plead affirmative defenses late; (4) whether the trial judge erred in denying the plaintiff's numerous motions for mistrial.  We conclude that there was no error.

The essential facts relevant to the plaintiff's accident are as follows.  On December 5, 1972, the plaintiff was working for the Western Waterproofing Company as part of a construction team involved in the construction of the New England Telephone building in Brockton.  Davison was the general contractor at the construction site and Standard was the masonry contractor.

The plaintiff's job was to work along with the bricklayers by applying mastic before they affixed the bricks.  On the

---

[1] The plaintiff argues that the defense of assumption of the risk was abolished by statute before the date of his accident.  He does not argue that we should abrogate the defense as a matter of common law, and retroactively to the date of his accident.  See note 6, *infra*.

day of his accident the plaintiff was required to mount movable staging which had been erected by employees of Standard. Late in the day he was called upon to mount a particular piece of scaffolding by use of a ladder. This scaffolding was raised during the time that the plaintiff was on it, and when he returned to the ladder in order to climb back down he discovered that the ladder no longer reached the scaffolding level. The plaintiff then proceeded fifteen feet to the corner of the pipe intending to climb down the scaffolding. He put his foot on the crossbar and slipped and fell backwards to the ground. As a result of this fall the plaintiff sustained injuries to his wrist and ribs. He was never able to return to his job because of the pain and stiffness in his wrist.

At the time of this accident the plaintiff had been employed as a waterproofer for twenty-one years. A substantial part of his work during that period had been performed on scaffolding. He had often climbed down scaffolding and had been on jobs where workers had fallen from scaffolding. On the day of the accident the weather was cold, foggy and damp with mist visible in the air. The plaintiff knew the scaffolding was slippery and that caution was required. Nevertheless, he did not call for a ladder because no other worker from his company was still on the site and it was his understanding that it would violate the custom and practices of a construction site for him to ask a bricklayer or tender to get another ladder for him.

1. The trial judge, by special questions and over the plaintiff's objection, submitted the defense of assumption of the risk to the jury on behalf of both defendants.[2] The jury found that the plaintiff knowingly assumed the risk of his injury and the judge accordingly entered judgment in favor of the defendants. The plaintiff contends that the defense of assumption of the risk was not applicable to his case because his injury occurred after January 1, 1971 — the ef-

---

[2] See the special questions reproduced in note 9, *infra.*

fective date of St. 1969, c. 761 (the "comparative negligence" statute).[3]  We do not agree.

The doctrine of assumption of the risk, long recognized in the common law of Massachusetts, can be summarized in the following terms.  "One who knows of a danger from the negligence of another, and understands and appreciates the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure."  *Fitzgerald* v. *Connecticut River Paper Co.,* 155 Mass. 155, 158 (1891).  The basis for denying recovery is expressed in the maxim that he who consents cannot receive an injury.  *Miner* v. *Connecticut River R.R.,* 153 Mass. 398, 402 (1891).  The injured plaintiff's risk-assuming conduct relieves the defendant of his duty of care toward the plaintiff.  See *Mellor* v. *Merchants' Mfg. Co.,* 150 Mass. 362, 365 (1890); *Fitzgerald* v. *Connecticut River Paper Co., supra* at 158.

---

[3] Statute 1969, c. 761, reads as follows: "SECTION 1.  Chapter 231 of the General Laws is hereby amended by striking out section 85 and inserting in place thereof the following section: —

"*Section 85.*  Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

"In any such action the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict, which shall state:

(1) the amount of the damages which would have been recoverable if there had been no contributory negligence; and

(2) the degree of negligence of each party, expressed as a percentage.

"Upon such findings of fact or the return of such a special verdict by the jury, the court shall reduce the amount of the damages in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided, however, that if said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court shall enter judgment for the defendant.

"SECTION 2.  This act shall take effect on January first, nineteen hundred and seventy-one, and shall apply only to causes of action arising on or after said date."

Assumption of the risk was one of the two substantive common law defenses to a negligence action, the other being contributory negligence. For over one hundred years the law in the Commonwealth was that if the plaintiff's own negligence was a contributory cause of his injury, he could not recover. See *Duggan* v. *Bay State St. Ry.*, 230 Mass. 370, 376-378 (1918), and cases cited.

As a result of the enactment of St. 1969, c. 761, contributory negligence ceased to be a complete defense to causes of action arising on or after January 1, 1971. Under this statute, a doctrine of comparative negligence was adopted, whereby a plaintiff, whose own negligence was less than that of the defendant, would not be completely barred from recovery, but would be awarded proportionately reduced damages.[4]

The plaintiff argues that, notwithstanding the fact that the 1969 statute, was completely silent on assumption of the risk, this court should presume that the Legislature intended it to be abolished along with contributory fault under the comparative negligence scheme. Such a presumption would have to be premised upon a finding that there was no significant distinction between the defenses of contributory negligence and assumption of the risk. That was decidedly not the case.

Although the two defenses frequently arose under the same set of facts, an important distinction existed in the respective standards to be applied in judging a plaintiff's conduct. A finding of contributory negligence resulted from the application of an objective standard. In determining whether or not an individual had exercised the requisite degree of care for his own safety, he was deemed to have had the knowledge, understanding and judgment of a reasonable man. See J.R. Nolan, Tort Law § 282, at 441 n.10 (1979), and cases cited. Restatement (Second) Torts § 496A, Comment d (1965).

---

[4] See note 3, *supra*.

In contrast, "[a]ssumption of the risk is determined on a subjective basis, concentrating on whether the particular plaintiff knew and appreciated the risk involved. A plaintiff's intelligence and experience are relevant considerations." *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 882 (1978). See W. Prosser, Torts § 68, at 447 (4th ed. 1971). Whether phrased in terms of consent or in terms of the plaintiff's conduct acting to relieve the defendant of his duty toward the risk-assuming plaintiff, the plaintiff's knowledge and voluntary decision to proceed is the basis for denying recovery, rather than the plaintiff's negligence. "Where a voluntary assumption of risk is ruled or found to exist, the question of contributory negligence is not reached." *Hietala* v. *Boston & A. R.R.*, 295 Mass. 186, 191, cert. denied, 299 U.S. 589 (1936).

The difference between the two defenses should not be obscured by the fact that the conduct of a particular plaintiff may constitute both negligence and assumption of the risk. One who undertakes a risk, knowing and appreciating the danger involved, may also in so doing fail to exercise due care for his own safety. It must be emphasized, however, that one may voluntarily assume the risk of harm and yet not be negligent in doing so. "[T]here may be a voluntary assumption of the risk of a known danger, which will debar one from recovering compensation in case of injury to person or property therefrom, even though he was in the exercise of due care." *Miner* v. *Connecticut River R.R.*, 153 Mass. 398, 402-403 (1891). Therefore, in view of the substantial distinction between the two defenses which has long been recognized by the common law, we are averse to presuming that the Legislature intended, by passing St. 1969, c. 761, to abolish by implication the defense of assumption of the risk.

We do not agree with the plaintiff's contention that the continued existence of assumption of the risk after the abolition of contributory negligence and the institution of comparative negligence creates such an unjust and absurd state of affairs that the Legislature could not have intended that

result. The clear purpose of St. 1969, c. 761, is to permit a partial recovery by an injured plaintiff whose negligence is not as great as the negligence of the defendant.[5] However, a risk-assuming plaintiff is not merely contributorily negligent. The Supreme Court of Rhode Island, in holding that the legislative adoption of a comparative negligence scheme did not abolish assumption of the risk, stated: "It seems to us that one who 'sees, knows, understands and appreciates' what he is doing . . . is worlds apart from one who unwittingly and unsuspectingly falls prey to another's negligence. In the former instance the plaintiff can be said to have consented to the possibility of harm, whereas in the latter situation he has failed to assess accurately his situation and the ramifications of his own action." *Kennedy* v. *Providence Hockey Club, Inc.,* 119 R.I. 70, 76 (1977). We note also that in addition to Rhode Island several other jurisdictions maintain assumption of the risk as an affirmative defense under a comparative negligence scheme. See *Arkansas Kraft Corp.* v. *Johnson,* 257 Ark. 629 (1975); *George* v. *Beggs,* 1 Kan. App. 2d 356, 359 (1977); *Blum* v. *Brichacek,* 191 Neb. 457, 461 (1974); *Bartlett* v. *Gregg,* 77 S.D. 406, 413 (1958); cf. *Rubio* v. *Southern Air Transp. Inc.,* 388 F. Supp. 1021, 1024 (D.P.R. 1975), aff'd without opinion, 539 F.2d 701 (1st Cir. 1976).

Our conclusion that St. 1969, c. 761, did not abolish assumption of the risk is bolstered by the settled rule of statutory construction that "[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Pineo* v. *White,* 320 Mass. 487, 491 (1946). Statute 1969, c. 761, makes no reference to assumption of the risk and expressed no intent to abolish or in any way limit the defense. Clearly the abrogation of the doctrine of assumption of the risk would constitute a material change in or repeal of the

---

[5] General Laws c. 231, § 85, was amended by St. 1973, c. 1123, to permit recovery by a plaintiff whose negligence was not greater than the negligence of the defendant.

common law. See *Graci* v. *Damon,* 6 Mass. App. Ct. 160, 169-170, aff'd, 376 Mass. 931 (1978) (abolition of assumption of the risk is a substantive change in the law).

The plaintiff appears to rely on a different rule of statutory construction in support of his interpretation of St. 1969, c. 761. The plaintiff emphasizes the fact that the wording of St. 1969, c. 761, is virtually identical to that of the Wisconsin comparative negligence statute, and that the Supreme Court of Wisconsin has concluded that assumption of the risk is no longer a defense separate from contributory negligence. See Wis. Stat. Ann. § 895.045 (West 1966), and *McConville* v. *State Farm Mut. Auto. Ins. Co.,* 15 Wis. 2d 374 (1962). The plaintiff relies upon the general rule that courts will usually give a statute the same construction as that given to it earlier by the courts of the State which first enacted the identical legislation. See *Commissioner of Banks* v. *Prudential Trust Co.,* 242 Mass. 78, 84 (1922).

The plaintiff's reliance upon this rule in the present circumstances is misplaced. The Supreme Court of Wisconsin did not achieve the abolition of the defense of assumption of the risk by way of statutory interpretation; but, rather, through independent judicial abrogation of the doctrine. In fact, the early Wisconsin cases subsequent to the passage of the Wisconsin comparative negligence statute[6] indicate that the Wisconsin Supreme Court did not conclude that the statute had affected the defense of assumption of the risk. See *Walker* v. *Kroger Grocery & Baking Co.,* 214 Wis. 519 (1934); *Scory* v. *LaFave,* 215 Wis. 21 (1934). Much later the Wisconsin Supreme Court abolished the doctrine of assumption of the risk as a matter of common law in *McConville* v. *State Farm Mut. Auto. Ins. Co.,* 15 Wis. 2d 374 (1962).[7] In doing so the court was following the lead of the Legislature. The court explained its approach in the following terms. "We are of the opinion that the new rule

---

[6] Wisconsin Laws, 1931, c. 242, creating Wis. Stat. § 331.045.

[7] The plaintiff has not argued for similar relief in this case, and thus we do not reach consideration of such action.

announced herein is more in harmony with the principle of comparative negligence adopted by our legislature than was the former rule." *McConville* v. *State Farm Mut. Auto. Ins. Co., supra* at 384-385.

Another convincing reason for rejecting the plaintiff's argument is found in St. 1973, c. 1123,[8] which again amended G. L. c. 231, § 85. The third paragraph of the 1973 statute expressly abolished the defense of assumption of the risk "in all actions hereunder," effective January 1, 1974. This raised the question of why the Legislature would include such a provision in the 1973 statute if it had intended that the defense be eliminated with the enactment of the 1969 statute.

The plaintiff refers to the opinion of the Appeals Court in *Graci* v. *Damon,* 6 Mass. App. Ct. 160, aff'd 376 Mass. 931 (1978), in suggesting that the 1973 statute was but a clarification of what the 1969 statute had already accomplished. It is true that the *Graci* opinion notes certain

---

[8] Statute 1973, c. 1123, amending G. L. c. 231, § 85, reads as follows: "Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the total amount of negligence attributable to the person or persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made. In determining by what amount the plaintiff's damages shall be diminished in such a case, the negligence of each plaintiff shall be compared to the total negligence of all persons against whom recovery is sought. The combined total of the plaintiff's negligence taken together with all of the negligence of all defendants shall equal one hundred per cent.

"The violation of a criminal statute, ordinance or regulation by a plaintiff which contributed to said injury, death or damage, shall be considered as evidence of negligence of that plaintiff, but the violation of said statute, ordinance or regulation shall not as a matter of law or for that reason alone, serve to bar a plaintiff from recovery.

"The defense of assumption of risk is hereby abolished in all actions hereunder.

"The burden of alleging and proving negligence which serves to diminish a plaintiff's damages or bar recovery under this section shall be upon the person who seeks to establish such negligence, and the plaintiff shall be presumed to have been in the exercise of due care."

provisions of the 1973 statute which are "clarifications in aid of interpreting the 1969 statute." 6 Mass. App. Ct. at 170. However, as the Appeals Court explained, other provisions of the 1973 statute, including the abolition of assumption of the risk as a defense, made substantive changes which precluded the Legislature from making the statute retroactive. *Id.* See *Wilson* v. *Boston Redevelopment Auth.*, 371 Mass. 841, 844 n.3 (1977) (abolition of defense of assumption of risk effected by St. 1973, c. 1123, has no application to 1966 injury); *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 882 n.7 (1978) (abolition of defense of assumption of risk effected by St. 1973, c. 1123, has no application to 1970 injury). Therefore, for all of the above reasons we conclude that St. 1969, c. 761, did not abolish assumption of the risk and the trial judge was correct in ruling that the defense was applicable in the instant case.

2. The plaintiff argues that the trial judge committed error in denying his motion for default judgment against Standard under rule 55 of the Massachusetts Rules of Civil Procedure, 365 Mass. 822 (1974), which provides for entry of default against a party who has "failed to plead or otherwise defend." The docket indicates that Standard had not filed an answer to the plaintiff's declaration. However, Standard's counsel did enter his appearance and voluntarily engaged in extensive discovery with the plaintiff over a three-year period.

Following the plaintiff's and Davison's openings, Standard's counsel, in his opening, orally issued a general denial and raised for the first time the affirmative defenses of contributory negligence and assumption of the risk. Following completion of the plaintiff's direct examination by Standard, the plaintiff moved for a default judgment against Standard. The motion was denied.

The decision to enter or remove a default judgment is essentially a matter of the trial judge's discretion. See Mass. R. Civ. P. 55 (c), 365 Mass. 823 (1974). Cf. *Jerry Martin Co.* v. *Hyannis Marina, Inc.*, 3 Mass. App. Ct. 746 (1975);

*Medunic* v. *Lederer,* 533 F.2d 891, 893-894 (3d Cir. 1976); *Barber* v. *Turberville,* 218 F.2d 34, 36 (D.C. Cir. 1954); *Alopari* v. *O'Leary,* 154 F. Supp. 78, 81 (E.D. Pa. 1957). We find no abuse of discretion in refusing to enter default here where the plaintiff did not move for default until after the trial had begun (see Mass. R. Civ. P. 55 (b) (2), 365 Mass. 882-823 [1974], providing that when a party against whom judgment by default is sought has appeared in the action he is entitled to at least seven days' written notice prior to the hearing on the application), and where Standard, while it did not formally answer, did "otherwise defend." See Mass. R. Civ. P. 55 (a) (providing for entry of default where a party fails to plead or otherwise defend).

3. The plaintiff argues further that the trial judge erred by entering judgment in Standard's favor, over the plaintiff's objection, on the affirmative defense of assumption of the risk despite Standard's dilatory assertion of this defense. Again we find no abuse of the judge's discretion in allowing such dilatory pleading. No prejudice to the plaintiff's case was occasioned by the judge's action because the codefendant Davison had filed an answer some four and one-half years prior to trial containing a general denial and pleading contributory negligence, assumption of the risk and other affirmative defenses.

4. The plaintiff, who had seasonably moved for a mistrial, contends that a mistrial was required for the following three reasons: (1) the jury were hopelessly confused by the judge's instructions; (2) the jury violated the court's instructions regarding the order in which interrogatories contained in the special verdict slip were to be answered; and (3) the jury never answered the proximate cause questions contained in the special verdict slip. We do not agree.

The case was submitted to the jury on a special verdict form containing written questions numbered one through

six[9] in accordance with Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). During their deliberations, which began on June 20, 1978, the jury returned to the courtroom four times. On June 20, the forelady informed the trial judge that the words "cause" and "contribute" in the questions were "holding us up" in answering questions 1 (b) and 2 (b).[10] At that point the trial judge further instructed the jurors on the issue of causation and dismissed them for the day.

On June 21, the jury, without reference to any specific issues or words, requested a dictionary. The trial judge denied the request, instructing the jury that the definitions given in the instructions were to be followed.

Later on June 21, the jury returned the special verdict slip showing the votes of the jury members on the written ques-

---

[9] The questions on the special verdict slip were as follows:

"1. (a). Was the defendant, Davison Construction Co., Inc. negligent? (b). If your answer is yes, did that negligence cause the injury to the plaintiff, Roy W. Riley?

"2. (a). Was the defendant Standard Contracting Co., Inc. negligent? If your answer is yes, did that negligence cause the injury to the plaintiff, Roy W. Riley?

"3. If your answer is 'yes' to both parts of *either* question 1 or 2, please state the total amount of money you find will fairly and reasonably compensate the plaintiff for his damages caused by the injury he received on December 5, 1972. Total (in words and figures):

"4. (a). Was the plaintiff, Roy W. Riley, negligent? (b) Did that negligence contribute to his injury?

"5. If your answer is 'yes' to both parts of either question 1 or 2, *and* to both parts of question 4 (and assume that the total causal negligence is 100%) what percentage of negligence, if any, do you attribute to:

| | |
|---|---|
| Plaintiff, Roy W. Riley | _____ % |
| Defendant, Davison Construction Co., Inc. | _____ % |
| Defendant, Standard Contracting Co., Inc. | _____ % |
| Total | 100% |

"6. Did the plaintiff, Roy W. Riley, knowingly assume the risk of his injury?"

[10] See note 9, *supra*, for text of the questions.

tions.  The forelady stated, "We all have a disagreement in our decision."  The trial judge further instructed the jury on the manner in which they were to complete the special verdict slip, stating "[t]hose questions . . . which ten of you may agree upon all I ask you is not to put in numbers but to put in either yes or no."  The judge impounded the special verdict slip and sent the jury out with a new slip, indentical in form.

Still later on June 21, the jury returned the second special verdict slip.  The forelady stated, "We have followed the Judge's instructions and we have answered the questions that we were able to answer in the manner in which he designated and . . . this is what we have come up with."  The jury had not answered questions 1 (b) and 2 (b).[11]  The trial judge sent the jury back to answer those two questions.  The jury then deliberated an additional twenty minutes.

On June 22, prior to the resumption of deliberations, at the request of the plaintiff, the trial judge allowed counsel for all parties to see the second special verdict slip.  Question 6, which asked whether the plaintiff knowingly assumed the risk of his injury, was answered in the affirmative.  On the basis of that answer, the judge ruled that the jury had disposed of the case and entered judgment for the defendants on the special jury verdict.

The declaration of a mistrial is within the sound judicial discretion of the trial judge.  *Shea* v. *D & N Motor Transp. Co.*, 316 Mass. 553, 555 (1944).  The plaintiff contends that the record in this action shows that the jury were "hopelessly confused" and that the trial judge abused his discretion in denying the plaintiff's repeated motions for a mistrial.  While the forelady's statements concerning the words "cause" and "contribute" and the request for a dictionary indicate some misunderstanding on the part of the jury, the trial judge properly gave further instructions on the issue of proximate cause.  See *Kellogg* v. *French*, 15 Gray 354, 357 (1860); G. L. c. 234, § 34.  Those communications from the

---

[11] See note 9, *supra*, for the text of the questions.

jury occurred during the first half of the deliberations. In neither subsequent communication did the jury indicate any further misunderstanding on the issue of proximate cause or any other legal issue.

The subsequent communications indicate that there was an inability to agree on the factual question whether the negligence of the defendants was the proximate cause of the plaintiff's injuries, which is quite different from confusion over the legal question of the meaning or significance of causation. The only other apparent source of confusion concerned the proper manner in which the jury should communicate their answers to the special questions. This was clarified by proper instructions on recording the answers.

The plaintiff further contends that the jury's failure to answer questions 1 (b) and 2 (b),[12] which resulted also in their failure to complete all questions in the order in which they appeared on the special verdict slip, required the declaration of a mistrial. An examination of a pair of cases concerning special verdicts under Fed. R. Civ. P. 49 (a), which is identical to Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), will demonstrate that this contention is without merit.

In *Skyway Aviation Corp.* v. *Minneapolis, Northfield & Southern Ry.*, 326 F.2d 701 (8th Cir. 1964), the jury found the defendant to be negligent and found such negligence to be a proximate cause of the plaintiff's injuries. The jury did not answer the third special question as to whether the plaintiff was contributorily negligent. However, the jury answered the fourth question, finding that the plaintiff's contributory negligence, if any, was not a proximate cause of the plaintiff's injuries. The Court of Appeals held that the jury's failure to answer the third question was immaterial, as the questions which were answered disposed of the case. *Id.* at 704.

In *Black* v. *Riker-Maxson Corp.*, 401 F. Supp. 693 (S.D.N.Y. 1975), the plaintiff sought damages for alleged

---

[12] See note 9, *supra*, for the text of the questions.

misrepresentations of fact violative of the Securities Exchange Act of 1934. The jury failed to answer special questions of whether the alleged statements, if made, amounted to misrepresentations. The jury did find that the alleged misrepresentations were immaterial and that the plaintiff had previously waived his right to bring the action. The court held that notwithstanding the unanswered questions, the jury had resolved "sufficient questions to require judgment for defendants on all issues of the case." *Id.* at 696.

In the instant case, as in *Skyway Aviation, supra,* and *Riker-Maxson Corp., supra,* the jury returned a verdict which disposed of the case. Any initial confusion on the issue of proximate cause was clarified by proper instructions. In any event, this issue was rendered immaterial by the jury's finding that the plaintiff assumed the risk — a finding which did not involve the issue of proximate cause. The trial judge's actions were proper and within the limits prescribed in G. L. c. 234, § 34. There was no abuse of discretion in denying the plaintiff's repeated motions for a mistrial and in entering judgment for the defendants on the special jury verdict.

*Judgment affirmed.*