Hamlin, J.
Plaintiffs Michael Gulizia and his wife Donna Gulizia brought this action against defendants George Knight (“Knight”) and Brookville Transport, Ltd. (“Brookville”) to recover damages resulting from personal injuries suffered by Mr. Gulizia. Mr. and Mrs. Gulizia moved for an assessment of damages and a hearing was held.
BACKGROUND
On April 13, 1992, Mr. Gulizia was traveling on Route 3, northbound, when his car was involved in an accident with a tractor trailer operated by Knight who was employed by Brookville. As a result of the automobile accident, he sustained extensive severe injuries to his right knee, right hip and multiple facial lacerations requiring multiple surgeries, extensive medical intervention and physical therapy.
On July 29, 1992, Mr. Gulizia commenced this action against Knight and Brookville. On September 24, 1992, the court allowed Mr. Gulizia’s motion to amend his complaint to add his wife Donna as a plaintiff. The case was dismissed on November 18, 1992 as a result of plaintiffs’ failure to serve defendants. Subsequently, on December 30, 1992, the court allowed plaintiffs’ motion to vacate that dismissal and defendants were served.
In March 1993, defendants filed their answers and plaintiffs filed a request for production of documents. On August 12, 1993, plaintiffs served interrogatories on the defendants.[3] Despite the requirement of Mass.R.Civ.P. 33(a) that interrogatories be answered within forty-five days after service, defendants failed to file either answers or objections, failed to produce certain documents, and also failed to request additional time within which to answer. On October 1, 1993, plaintiffs mailed an application pursuant to Mass.R.Civ.P. 33(a) to each defendant which specified that defendants failed to answer the interrogatories and requested that final judgments for relief enter. Written notice of the plaintiffs’ application stated in part: “final judgment for relief be entered as appropriate for” plaintiffs.
Defendants, still, one and one-half years after plaintiffs served interrogatories on each defendant, had failed to respond. On March 2, 1995, plaintiffs’ reapplication pursuant to Mass.R.Civ.P. 33(a) was mailed. Written notice of the plaintiffs’ reapplication was sent that day to each defendant by the Clerk of the Superior Court. That notice stated in part: “Final judgment would be entered unless the answers to interrogatories were filed, either within thirty (30) days from the date of the notice or prior to the filing of the reapplication for final judgment.”
*686 On September 19, 1995, almost six months after the clerk sent out notice of the reapplication, defendants filed an emergency motion for removal of default.
On December 11, 1995, after meeting with the parties, and by agreement of the parties, the court appointed Camille Sarrouf, Esq. as mediator. Mediation was unsuccessful.
On February 14, 1996, the court after due and careful consideration denied the defendants’ emergency motion for removal of the default. There was no good cause shown pursuant to Mass.R.Civ.P. 55(c), nor any basis under Mass.R.Civ.P. 60(B) to allow the motion. Whether to “remove a default judgment is essentially a matter of the trial judge’s discretion, see Riley v. Davison Construction Co., Inc., 381 Mass. 432, 441 (1980), and based upon all the facts and circumstances in this case, the court denied the motion, and allowed judgment for the plaintiffs against the defendants on the issues of liability. (Exhibit A — Docket entries attached hereto.)
On March 18, 1996 the court held a lengthy hearing concerning assessment of damages. Subsequently the parties filed proposed findings of facts.
Concerning the plaintiffs injuries, immediately after the accident surgeries were performed on his right knee and right hip by Anthony Teebagy, M.D., an orthopedic surgeon at the University of Massachusetts Medical Center, where he was airlifted after the accident due to the extent and severity of his injuries. His right hip operation was followed by using a compression screw and long-sided plate to hold the hip together.
The plaintiff was also treated after the accident by the Plastic Surgery Service which cleaned and closed his numerous facial lacerations.
He was an inpatient until April 24, 1992 and during this period of time had extensive daily physical therapy while taking numerous medications including Per-cocet and Heparin. He was in severe pain.
Upon discharge he was prescribed medication including Vilodin which he had to take every three hours and Motrin which he had to take three times daily. His discharge diagnosis was “right traumatic knee arthro-tomy and an intertrochanteric femur fracture on the right; status post irrigation and debridement of right knee laceration and open reduction and internal fixation of right hip fracture.” He was unable to put any weight on his right leg until May 5, 1992 when Dr. Teebagy advised that he begin with 30% weight on the right knee.
On May 7, 1992, the plaintiff began intensive outpatient physical therapy consisting of visits three times a week. He was unable to ambulate without the aid of crutches through August 1992 and had to use a cane until around the end of October 1992. For a period of time after the accident, he was on a CPM machine 23 hours a day while at home.
The problems in the plaintiffs right knee and hip as a result of the accident continued to plague him severely for approximately 2 V2 years after the accident and continue to affect his life now and will do so in the future. On April 6, 1993, at the University of Massachusetts Medical Center, he underwent further surgical intervention including removal of the compression hip screw and side plate from his right hip, as well as arthroscopy and debridement of adhesions and scar tissue and chondroplasty of his patella. On January 12, 1994 his right knee required further arthroscopy because of internal derangement. Intensive physical therapy continued into February 1995.
As a result of the accident he was totally disabled and unable to work for approximately 21/2 years.
Concerning the plaintiffs medical situation, it is more probable than not that future surgery will be required because the accident will cause future arthritic changes to his right knee to happen quicker than normal for a man of his age. It is likely that he will need a total knee replacement in the future.
As a result of the accident, he has a permanent moderate-to-significant limp which the court had occasion to observe as he approached and left the witness stand. He has permanent partial impairments of (1) the right hip — 10%, (2) the right knee — 8%, and (3) the cervical spine — 5%.
He has a 9 inch scar which is some Vfe" in width extending from his left hip to his thigh as well as multiple scarring about the right knee including scars, one 41/2" long and another W wide.
Mr. Gulizia is a 35-year old man who continues to suffer constant pain in his right hip and knee. He continues to have physical therapy. Recently an unsuccessful attempt was made to alleviate the pain by a cortisone injection into his right hip. His total medical bills to date are $78,382.57.
Mr. Gulizia has been employed for over seventeen years as a mailer for the Boston Globe Printing Company, working at its Billerica, Massachusetts site. His position requires him to constantly lift forty-pound bundles of paper and stand at printing machines while feeding material into the machines. He must also lift and replace paper rolls. At times when problems arise in the loading area his job description requires him to carry and load the papers into the delivery trucks. He is physically unable to work the day shift and has transferred to the night shift which is less physically demanding and enables him to retain his job.
Before the accident, in addition to his regular hours, the plaintiff worked overtime at his place of employment and several other newspapers. Before the accident he was able to earn from $70,000.00 to $75,000.00. As a result of the accident, he is and will be unable to work any overtime. His annual salary is presently approximately $50,000.00.
*687 He was totally disabled for approximately 2VÍJ years resulting in lost wages of $ 180,250.00. The diminution of earning capacity is $25,000 and with an average work life expectancy of thirty years results in lost earning capacity of $750,000.00.
He has a high school education, and despite clearly being a hardworking man, really has no transferrable skills other than those he presently has.
The plaintiff and his wife Donna Gulizia have been married for over ten years and have a son Derrick, aged eleven. The pain and suffering, both physical and mental, suffered by Mr. Gulizia, as well as the mental pain and suffering of Mrs. Gulizia has been extensive and unrelenting. Lesser people would have cracked under the strain.
Mrs. Gulizia who, at the time of the accident, worked as a sales clerk at a Disney Store for an hourly wage of $7 to $8, plus commissions, had to stop work for almost two months after her husband was discharged from the hospital. During this time she had to physically help her husband with all his personal needs, including showering, dressing and getting in and out of bed, as well as caring for their son. She had to do all work around the house including trash, laundiy, cooking, shopping, cleaning and a myriad of other tasks. Mrs. Gulizia had to drive her husband to physical therapy three times a week and on visits to the doctor once a month and sometimes more.
Mrs. Gulizia was only able to work at the Disney Store in the mornings on the days her husband had physical therapy because she would have to drive him. When she did not have to drive him she worked a full day at Disney. She lost wages totaling $720.00 on two separate periods from 4/13/92 to 5/13/92 and for two weeks in April 1993 when Mr. Gulizia again had surgery.
Prior to the accident, the plaintiffs had a full and active life with family and friends, socializing and going to their son’s baseball and soccer games and working on an upstairs room which would be their bedroom. After the accident, the plaintiffs were totally restricted for a considerable period of time from all those activities. Mr. Gulizia could not drive an automobile for six months after the accident, and could only drive short distances for six months after that. He was again unable to drive from his April 1993 surgery until June 1993 when he could again drive short distances.
The accident and resulting severe medical, emotional and financial problems caused a strain on the marriage and severe financial and personal hardship for the plaintiff and his family. He will never again be able to play sports with his son the way he did before the accident.
Mr. Gulizia has a life expectancy of 39.8 years.
Based upon the foregoing, the court assesses damages against the defendants for Mr. Gulizia in the sum of $2,609,632.57. Of this sum $78,382.57 is for medical bills, $181,250.00 is for lost wages, and $750,000.00 is for lost earning capacity. The remaining $1,600,000.00 is for Mr. Gulizia’s past, present and future pain and suffering, both physical and mental, as a result of the accident. Further, in awarding this sum of $1,600,000.00, the Court has considered all the relevant credible matters including, but not limited to, the permanency of his limp, the permanent partial impairment of his right hip, right knee and cervical spine, and the permanent scarring. This amount also considers that a future operation on his right knee, including a total knee replacement is probable, and that the quality of his life has been permanently and irrevocably impaired.
Based on consideration of all the relevant credible matters, the Court assesses damages against the defendants for Mrs. Gulizia on her loss of consortium claim for $500,720.00. $720.00 of this sum is for lost wages.

In November 1993, the court reviewed and vacated a nisi dismissal. In April 1994, plaintiffs assented to defendants’ motion to continue the trial date which was allowed by the court.