GERALD GRACI vs. ROBERT G. DAMON & others.

Middlesex. March 15, 1977. — March 27, 1978.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Negligence*, Electricity, One owning or controlling real estate, Contributory, Comparative. *Practice, Civil*, New trial. *Statute*, Construction.

In an action by a tenant in a shopping mall to recover for injuries caused by contact with live electrical terminals as he was attempting to nail shut the doors of a box housing the terminals, evidence was sufficient to warrant a finding that an electrician had been negligent in leaving the box unsecured and that, despite intervening tinkering with the doors by the plaintiff and by an air conditioning contractor, the electrician's negligence was a proximate cause of the plaintiff's injuries. [163–166]

The judge in a tort action did not abuse his discretion in denying the defendant's motion for a new trial based on an affidavit by the defendant that at the time of trial he had been unaware of separate

legal proceedings between one of the plaintiff's witnesses and a codefendant. [166–167]

The action of a tenant in a shopping mall in several times nailing shut a box housing live electrical terminals after it had been left open by an electrician and an air conditioning contractor did not relieve the owner of the shopping mall of his duty to ensure that the electrical box was properly secured. [167]

In determining whether the negligence of a plaintiff in a tort action was as great as the negligence of multiple defendants in accordance with G. L. c. 231, § 85, as appearing in St. 1969, c. 761, the amount of negligence attributable to all defendants must be combined and the total measured against the negligence attributable to the plaintiff. [167–171]

TORT. Writ in the Superior Court dated July 6, 1972.

The action was tried before *J. P. Sullivan*, J.

*Edward W. Waystack (John P. Fitzgerald* with him) for Robert G. Damon.

*Joseph M. Cohen (Jacob Shair* with him) for Maynard M. Lind.

*Marcus E. Cohn* for the plaintiff.

*John Arthur Johnson, Jr.*, for Charles R. McCauley, Jr., trustee, submitted a brief.

GOODMAN, J. The plaintiff, Gerald Graci, brought this action to recover for injuries received as a result of an accident which took place on June 13, 1972, at the Wilmington Road Shopping Plaza in Burlington. On that date Graci suffered severe burns when he came in contact with live power terminals inside a box-like structure which he was trying to nail shut at the shopping center. Graci at that time operated a dry cleaning establishment in the shopping center. The defendants are Charles R. McCauley, trustee of the Charles Realty Trust, owner of the shopping center, Robert G. Damon, doing business as Damon & Son Heating & Air Conditioning, a contractor engaged by McCauley to install air conditioning for another tenant in the shopping center, and Maynard M. Lind, doing business as Maynard M. Lind Co., hired by Damon to perform electrical work in connection with the air conditioning installation. The case was tried to a jury,

who returned a special verdict (as required by G. L. c. 231, § 85, as appearing in St. 1969, c. 761[1]), finding Graci's damages to be $16,300, and apportioning the negligence as follows: Graci, 15%; McCauley, 40%; Lind, 40%; and Damon, 5%. The judge accordingly reduced the damages "in proportion to the amount of negligence attributable

---

[1] Statute 1969, c. 761, approved August 22, 1969, effective January 1, 1971 (the 1969 statute), rewrote G. L. c. 231, § 85, to provide in pertinent part as follows: "Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made. In any such action . . . the jury shall return a special verdict, which shall state: (1) the amount of the damages which would have been recoverable if there had been no contributory negligence; and (2) the degree of negligence of each party, expressed as a percentage. Upon . . . the return of such a special verdict by the jury, the court shall reduce the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided, however, that if said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court shall enter judgment for the defendant." Statute 1973, c. 1123, approved December 4, 1973, effective January 1, 1974 (the 1973 statute), again rewrote G. L. c. 231, § 85, to provide (among other things) as follows: "Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the total amount of negligence attributable to the person or persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made. In determining by what amount the plaintiff's damages shall be diminished in such a case, the negligence of each plaintiff shall be compared to the total negligence of all persons against whom recovery is sought. The combined total of the plaintiff's negligence taken together with all of the negligence of all defendants shall equal one hundred per cent. [1st par.] . . . The defense of assumption of risk is hereby abolished in all actions hereunder. [3d par.] The burden of alleging and proving negligence which serves to diminish a plaintiff's damages or bar recovery under this section shall be upon the person who seeks to establish such negligence, and the plaintiff shall be presumed to have been in the exercise of due care." (4th par.)

to the person for whose injury, damage or death recovery is made" (G. L. c. 231, § 85, as amended through St. 1969, c. 761), and entered separate judgments for the plaintiff for $13,855.00 (85% of $16,300) against each of the defendants. All three defendants appealed.

Lind and McCauley contend that there was not sufficient evidence to warrant submitting the case against them to the jury. Lind also contends that it was error to deny his motion for a new trial. Damon does not contest the finding of negligence against him but argues that, since his negligence was found by the jury to be less than that of the plaintiff, the 1969 statute (see n.1) absolves him from liability. We affirm the judgments.

We summarize the events leading up to the accident as the jury could have found them from the evidence in its aspect most favorable to the plaintiff. *Gelinas* v. *New England Power Co.*, 359 Mass. 119, 120 (1971). *Donovan* v. *DiPaolo*, 4 Mass. App. Ct. 576, 577 (1976). Damon and Lind began work on the installation of the air conditioning equipment late in May of 1972. At that time Graci, as McCauley had requested, gave them keys to a box-like structure (sometimes referred to as the "electrical box") which housed the electrical equipment that it was Lind's job to work on. The structure was approximately eight feet high, eight feet wide, and two feet deep and was attached to the exterior wall of Graci's establishment about two feet off the ground. Access to the equipment in the electrical box was by two doors, each a panel of plywood about eight feet by four feet. When Lind first observed the doors they were locked securely by two padlocks, one at the top and one at the bottom, fitted through hasps and keepers, about two feet from the top of the structure and two feet from the bottom. McCauley had given Graci the keys sometime before he first moved into the shopping center so that they would be easily available.

When Graci gave Lind and Damon the keys to the electrical box, he requested that at the end of the day they

lock the box and return the keys to him. He cautioned them that children frequented the area and were destructive and that there was vandalism in the area. That evening the keys were not returned to Graci, and the doors to the electrical box were wide open. Graci nailed them shut. The keys were never returned to him, and the electrical box remained unlocked. In the course of about two and one-half weeks while the air conditioning was being installed, he spoke to Damon and Lind about the matter a number of times. A few days after Lind and Damon began work, Graci called McCauley and told him what had happened, that the electrical box was being left open, and that he had complained to Damon and Lind without any results. He also told McCauley that there were children in the area, that a dangerous situation was being created, and that he was nailing the electrical box shut. McCauley told Graci that he would speak to Damon and that "he would take care of it." However, the matter was never taken care of, though Graci spoke to McCauley about the condition twice more.

Lind left the job unfinished on June 2 because of the press of other work. At that time two live terminals were exposed in the electrical box. Damon continued working on the air conditioning installation but had no occasion to be at the electrical box until the morning of June 13. The previous evening, June 12, Graci had nailed the electrical box shut with three staging nails, one at the top, one in the middle, and one at the bottom. Late in the morning of June 13, he saw Damon at the electrical box, which was then open. At about 2:00 P.M. Graci discovered that the doors to the electrical box were open. There were children in the area, and he proceeded once again to nail the doors. While doing so he slipped; his hammer made contact with the exposed live terminals, and he received a severe shock and burns to his hands and arms.

*Lind's liability.* The jury could have found on June 2, 1972, when Lind left the unfinished job, he left the electrical box open and did not return the keys to Graci. This

obviously created a danger, known to Lind, from the live terminals in the electrical box and was inconsistent with the high degree of care required in dealing with electricity. *Gelinas* v. *New England Power Co.*, 359 Mass. at 124. *Leavitt* v. *Glick Realty Corp.*, 362 Mass. 370, 376 (1972). The issue is, therefore, whether Lind's negligence in these respects was an operative factor in causing Graci's injuries. This is a question of proximate cause which was for the jury to determine. We cannot say that it was impermissible as a matter of law for the jury to have found that the danger from the live terminals created by Lind's negligence persisted despite the intervening tinkering with the doors by Graci and Damon, negligent though it was. *Burke* v. *Hodge*, 217 Mass. 182, 184–185 (1914). *Leahy* v. *Standard Oil Co.*, 224 Mass. 352, 359–364 (1916). *Robinson* v. *Weber Duck Inn Co.*, 294 Mass. 75, 79–80 (1936). *Tritsch* v. *Boston Edison Co.*, 363 Mass. 179, 181–182 (1973). Compare *Lane* v. *Atlantic Works*, 111 Mass. 136, 139–140; *Morrison* v. *Medaglia*, 287 Mass. 46, 49–50 (1934); *Sarna* v. *American Bosch Magneto Corp.*, 290 Mass. 340, 343–344 (1935); *Martin* v. *Reis*, 344 Mass. 32, 36 (1962). See *Smith* v. *Eagle Cornice & Skylight Works*, 341 Mass. 139, 141–142 (1960); *Stamas* v. *Fanning*, 345 Mass. 73, 76 (1962).

Lind further argues that "any conduct by Mr. Lind in leaving the doors to the box unsecured ceased to be a dangerous force as of the moment when on June 12, Mr. Graci secured the doors . . . ." But the jury could have found that Graci's nailing the electrical box was not the equivalent of padlocking it. See *McMenimon* v. *Snow*, 219 Mass. 231, 233 (1914); *Lynch* v. *C.J. Larivee Lumber Co.*, 223 Mass. 335, 340 (1916). The jury could have found that the nailing was a makeshift, inadequate to stop tampering with the box, and indeed that the June 12 nailing was a response to such tampering, since neither Lind nor Damon was at the box between June 2, when Graci had nailed the box, and June 12, when he again nailed it. Further, the jury could have believed that on June 13

Damon nailed the box before he left at about 10:00 A.M. but that by 2:00 P.M. Graci found it open. Indeed, Lind testified that when he came to inspect the burned terminals, the day after the accident, he nailed the doors shut with the three staging nails and went to buy two padlocks. When he returned in about an hour, he found the doors open, though neither Graci nor Damon had opened them and neither had any knowledge how the doors had come to be open. See *Robitaille* v. *Netoco Community Theatre of North Attleboro, Inc.*, 305 Mass. 265, 266 (1940); *Saldi* v. *Brighton Stock Yard Co.*, 344 Mass. 89, 97 (1962).

Lind's motion for a new trial on the ground of newly discovered evidence was properly denied. The affidavit which asserts the basis for the motion (no oral evidence appears to have been taken) contains nothing on which the trial judge could have made the threshold finding that the evidence, claimed to be newly discovered, "was not available to . . . [Lind] for introduction at the original trial by the exercise of reasonable diligence . . . ." *DeLuca* v. *Boston Elevated Ry.*, 312 Mass. 495, 497 (1942), quoted in *Spiller* v. *Metropolitan Transit Authy.*, 348 Mass. 576, 579 n.3 (1965). *Nicholas* v. *Lewis Furniture Co.*, 292 Mass. 500, 505–507 (1935).[2] In any event we cannot say on the record in this case that the judge was required to find that the additional evidence (the materiality of which Lind contends was the main issue raised by his requests for rulings) was "important evidence of such a nature as to be likely to affect the result." *DeLuca* v. *Boston Elevated*

---

[2] The affidavit made by Lind asserts only that "I had no personal knowledge that the co-defendant, Charles R. McCauley, Jr., was a party to a separate legal proceeding pending in the Appeals Court of this Commonwealth under Docket N. 74-351, Charles R. McCauley, Jr., Trustee vs. Sons Pharmacy, Inc. — Sons Pharmacy, Inc. vs. Charles R. McCauley, Jr., Trustee." (The owner of the pharmacy was a witness for the plaintiff.) No mention is made of the knowledge, or lack of it, of Lind's attorney who tried the case together with McCauley's counsel.

*Ry.*, 312 Mass. at 497–500. *Spiller* v. *Metropolitan Transit Authy.*, 348 Mass. at 579. Moreover, "a new trial 'ought not to be granted unless on a survey of the whole case it appears to the judge that otherwise a miscarriage of justice would result.' *Nicholas* v. *Lewis Furniture Co.*, 292 Mass. at 507 and cases cited." *Spiller* v. *Metropolitan Transit Authy.*, 348 Mass. at 580. This is not such a case.

*McCauley's liability.* McCauley concedes, as he must, that it was his duty as trustee of the trust which owned the shopping center to exercise a high degree of care to guard against the danger from the electricity on the premises. *Gelinas* v. *New England Power Co.*, 359 Mass. at 124. *Leavitt* v. *Glick Realty Corp.*, 362 Mass. at 376. And since electricity is a dangerous instrumentality that duty was not diminished because the plaintiff's injury arose out of the work of an independent contractor or sub-contractor. Because of "the necessarily dangerous character of the work . . . the law . . . mak[es] each person concerned in the work responsible if, through any lack of reasonable care on his own part in guarding against the known dangers of the undertaking, injury results from the negligence of those to whom he entrusts its performance." *McConnon* v. *Charles H. Hodgate Co.*, 282 Mass. 584, 588 (1933). *McGinley* v. *Edison Elec. Illuminating Co.*, 248 Mass. 583, 585–586 (1924). *Ferguson* v. *Ashkenazy*, 307 Mass. 197, 202–203 (1940). *Leavitt* v. *Glick Realty Corp.*, 362 Mass. at 376–377. McCauley argues that Graci's nailing of the electrical box was a sufficient performance of McCauley's duty; the reasons for rejecting that argument are set out in connection with the discussion of Lind's liability.

*Damon's liability.* Damon argues that he is absolved from liability because the jury found his negligence to be less than Graci's and that Graci could recover from him only if his "negligence was not as great as the negligence of the person against whom recovery is sought"—otherwise "the court shall enter judgment for the defendant." G. L. c. 231, § 85, as amended by the 1969 statute (see n.1).

Damon points out that the wording of the 1969 statute is the same as that of the Wisconsin statute (Wis. Stat. Ann. § 895.045 [West 1966]) in effect when the 1969 statute was passed. And indeed the Wisconsin statute has served as a model for statutes in other States and presumably in Massachusetts. See Forty-fifth Report of the Judicial Council (1969), Pub. Doc. No. 144, at 35. Damon contends that we should adopt the Wisconsin case law which has consistently refused to compare a plaintiff's negligence with the total negligence of multiple defendants but has rather compared a plaintiff's negligence with that of each defendant, denying recovery against any defendant whose negligence was less than the plaintiff's. *Walker* v. *Kroger Grocery & Baking Co.*, 214 Wis. 519, 536 (1934) (first establishing the rule). *Becker* v. *Milwaukee*, 8 Wis. 2d 456, 465 (1959) (where the plaintiff and both defendants were all equally negligent, the plaintiff could not recover from either defendant). But see dissenting opinion by Hallows, C.J., in *Vincent* v. *Pabst Brewing Co.*, 47 Wis. 2d 120, 135–136 (1969), and concurring and dissenting opinions in *Gross* v. *Denow,* 61 Wis. 2d 40, 52–55 (1973). Contentions such as Damon's have been accepted, and the Wisconsin rule has been followed in other jurisdictions. *Rawson* v. *Lohsen,* 145 N.J. Super. 71, 77 (1976). *Marier* v. *Memorial Rescue Service, Inc.,* 296 Minn. 242, 244–245 (1973) (in which, however, the court reads the Minnesota statute to combine the negligence of multiple defendants engaged in a common enterprise [296 Minn. at 246]). See *Howard* v. *Spafford,* 132 Vt. 434, 438 (1974).

However, the Wisconsin rule has been rejected in Arkansas in *Walton* v. *Tull,* 234 Ark. 882, 891–895 (1962), decided under a statute similar to the Wisconsin statute and containing the same ambiguity (Ark. Stat. Ann. §§ 27-1730.1 and 27-1730.2 [1962]; see now § 27-1765 [1977 Supp.]). The court in the *Walton* case characterized the result under the Wisconsin rule as "demonstrably unjust" (at 892–893) in denying recovery to a plaintiff whose negligence is less than the total negligence of all the

defendants. See also *Riddell* v. *Little*, 253 Ark. 686, 688–
689 (1972). Compare the dissenting opinion of Harris,
C.J., in the *Walton* case (at 895–898), which emphasizes
the possible injustice to a co-defendant whose negligence
may be much less than that of the plaintiff. See generally
for discussions of the varying considerations, Schwartz,
Comparative Negligence §§ 3.5(C) and 16.6 (1974); Note,
Torts: Oklahoma's Uncharted Land of Comparative Neg-
ligence, 27 Okla. L. Rev. 122, 126–130 (1974). Cases are
collected in Annot., 8 A.L.R.3d 722, 726–731 (1966). For a
comprehensive survey of comparative negligence stat-
utes, see Heft & Heft, Comparative Negligence c.3 (1971)
and 1977 Cumulative Supplement.

In view of the *Walton* case and the split in the Wiscon-
sin court, we cannot assume (as we ordinarily do; see
*Commissioner of Banks* v. *Prudential Trust Co.*, 242 Mass.
78, 84 [1922]; *Miller* v. *Stern*, 326 Mass. 296, 301 [1950])
that the Massachusetts Legislature intended to import
the entire Wisconsin case law relating to the Wisconsin
statute. Indeed it is clear that the Massachusetts Legisla-
ture did not accept the closely related rule in Wisconsin
requiring contribution by joint tortfeasors in proportion
to the degree of their negligence. See *Bielski* v. *Schulze*,
16 Wis. 2d 1, 6–14 (1962). It rather retained intact G. L.
c. 231B ("Contribution Among Joint Tortfeasors"), insert-
ed by St. 1962, c. 730, which provides in § 2, "In determin-
ing the pro rata shares of tortfeasors in the entire liabili-
ty (a) their relative degrees of fault shall not be consid-
ered . . . . "

Any assumption that our Legislature intended to adopt
the Wisconsin rule is further vitiated by the 1973 statute
(see n.1), which is entitled, "An Act providing for further
clarification of the doctrine of comparative negligence,"
amending the 1969 statute, which is entitled, "An Act
limiting the effect of contributory negligence as a defense
and *establishing the doctrine of comparative negligence*"
(emphasis supplied). The 1973 statute changes the phrase
"negligence of the person against whom recovery is

sought" to read "the total amount of negligence attributable to the person or persons against whom recovery is sought." It thus makes clear that the negligence of a plaintiff is to be compared with the total negligence of all the defendants, all of whom are liable to the plaintiff, with contribution among the joint tortfeasors on a pro rata basis in accordance with G. L. c. 231B, which remains unchanged. See 1973 Ann. Survey Mass. Law § 11.12, at 319. To be sure, the 1973 statute contains substantive changes (see paragraphs designated 1st par. and 3d par. in n.1), and it is for this reason that the statute is not made retroactive. But this does not preclude our looking to those provisions of the statute which are clarifications in aid of interpreting the 1969 statute.[3] *Hurle's Case,* 217 Mass. 223, 226 (1914). *Fitz-Inn Auto Parks, Inc.* v. *Commissioner of Labor & Indus.,* 350 Mass. 39, 42 (1965).[4]

---

[3] We note the addition in the 1973 statute of the fourth paragraph of § 1 (see n.1) which specifically places the burden of showing contributory negligence on the defendant. This had been eliminated when the 1969 statute superseded the earlier version of c. 231, § 85 (as appearing in St. 1952, c. 533, § 1), which contained that provision. But it seems clear that there was no intent in the 1969 statute to shift the burden of showing lack of contributory negligence onto the plaintiff as it had been at common law (see *Brown* v. *Kendall,* 6 Cush. 292, 297 [1850]; *Duggan* v. *Bay State Street Ry.,* 230 Mass. 370, 377 [1918]) and that the addition of that paragraph in the 1973 statute was a clarification.

[4] We note in that case that the court said with reference to an amendment which they held to be clarifying, "However, the amendment was enacted soon after the present controversy arose, so it is just as logical to regard it as a clarification of an ambiguity and a legislative interpretation of the original act." 350 Mass. at 42. We see a parallel in our situation, since the comments on the 1969 statute (see Smith, Comparative Negligence in Massachusetts, 54 Mass. L.Q. 140, 145 [1969]; Bouchard, Apportionment of Damages Under Comparative Negligence, 55 Mass.L.Q. 125, 128 [1970]) indicated the possibility of an interpretation in accordance with the Wisconsin rule which the 1973 statute indicated was not intended. See 1973 Ann. Survey Mass. Law § 11.12, at 319.

This is an appropriate occasion to use G. L. c. 4, § 6, Fourth, which provides, among other things, that "words importing the singular number may extend and be applied to several persons or things." And we thus construe "person" in the 1969 statute to mean "persons." *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 49 (1975). This interpretation has the added advantage that it allows all plaintiffs in actions arising from and after January 1, 1971, the effective date of the 1969 statute, to be treated more nearly equally. See *Packard Clothes Inc.* v. *Director of the Div. of Employment Security*, 318 Mass. 329, 335–336 (1945). Also, this interpretation makes it unnecessary for the courts to deal with two sets of complexities, one of which would be applicable only to actions arising in the three year period between January 1, 1971, and January 1, 1974, the effective dates of the 1969 statute and the 1973 statute, respectively.

*Judgments affirmed.*