THE SHANTIGAR FOUNDATION *vs.* BEAR MOUNTAIN BUILDERS.

Franklin. December 4, 2003. - March 5, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Negligence,* Comparative, Joint tortfeasor, Fire, Duty to prevent harm. *Joint tortfeasors.*

At a jury trial, statements by plaintiff's counsel objecting to the omission of a particular issue on the verdict slip sufficed to preserve that issue for appellate review. [135-136]

This court concluded that the Massachusetts comparative negligence statute, G. L. c. 231, § 85, did not require apportionment of negligence for a settling tortfeasor, where the plain language of the statute required a comparison only of the negligence of the named parties participating in the trial [136-138]; where omitting the settling tortfeasor from the verdict slip neither created a result inconsistent with the jury's finding of fact [138-139] nor contravened the legislative intent underlying the comparative negligence statute [139-142]; and where any policy ramifications of omitting absent tortfeasors from apportionment of negligence were for legislative consideration [142-144].

In a civil action, a Superior Court judge properly admitted evidence that the plaintiff decided not to install a sprinkler system in its barn, which subsequently burned, as a jury could reasonably conclude from the evidence that the plaintiff was aware of a particular danger of fire. [144-145]

CIVIL ACTION commenced in the Superior Court Department on October 13, 2000.

The case was tried before *Judd J. Carhart,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Anthony R. Zelle (John O'Brien* with him) for The Shantigar Foundation.

*Joseph T. Doyle, Jr. (Matthew W. Perkins* with him) for Bear Mountain Builders.

SPINA, J. The Shantigar Foundation appeals from a judgment of the Superior Court in favor of Bear Mountain Builders, after a jury found Shantigar sixty per cent negligent and Bear

Mountain forty per cent negligent in the destruction by fire of a barn owned by Shantigar. Shantigar claims that the trial judge erroneously refused to permit the jury, when comparing liability pursuant to G. L. c. 231, § 85, to consider the negligence of a second tortfeasor with whom Shantigar had settled prior to trial. Shantigar also claims error in the admission of evidence concerning its decision not to install a sprinkler system in the barn. We affirm.

1. *Facts.* On the evening of January 26, 2000, a fire destroyed a Nineteenth Century barn owned by the Shantigar Foundation in Rowe. Shantigar, an organization founded by playwright Jean-Claude van Itallie, was in the process of renovating the barn for use as a spiritual learning center where students and visitors could attend workshops and classes. The renovation, which had been ongoing for some two and one-half years at a cost to Shantigar of just under $1 million, was substantially completed at the time of the fire.

Shantigar had contracted with Bear Mountain to perform some of the renovation work. Bear Mountain, a sole proprietorship run by Joseph Kayan, had one employee who worked on the project, Brandon Boucias. Kayan also subcontracted work to Cove Building Company (Cove), a sole proprietorship run by Jeffrey Stone. At the time of the fire, Stone had two employees, including Richard Moran.

Approximately one year before the fire, Shantigar began contracting directly with Cove. Kayan had decided to spend less time at the project site, although Boucias still worked there. Kayan appeared on the site every ten to fourteen days. Van Itallie, as head of Shantigar, was also present and actively involved in the direction and details of the project, but relied on Kayan to supervise construction. The building permit applications for the project listed Kayan as the construction supervisor.[1]

Van Itallie testified that he and the professionals hired to work on the barn discussed the fire safety measures mandated by law. He recognized the fact that the barn was a fire hazard because it was old and "dried out." He further testified that,

---

[1] The plaintiff's expert witness testified that, under the State building code, the contractor whose license appears on the building permit is responsible for construction safety.

although he did not "like the look of a sprinkler system in an old barn," he would have installed one had the law required it. The project's architect testified that, in his opinion, the barn was "a tinderbox," and he recommended installing a sprinkler system, but because it was not legally required, van Itallie opted not to install one.[2] Heat detectors and smoke detectors, which were required by law, were to be installed throughout the barn, but at the time of the fire not all of them were in place, and the system was not functioning.

During the renovation van Itallie requested that the contractors use "natural" products, and provided Kayan with a catalogue that advertised BioShield, a linseed oil based product, to be applied to wood surfaces such as floors and stairs. Van Itallie testified that he assumed the product would be applied with rags. He further testified he was familiar with the concept of spontaneous combustion, and knew that "oily rags left around do cause a fire." Kayan and the project's architect recommended using polyurethane on the floors, but van Itallie wanted to use BioShield.

In August, 1999, workers discovered smoke curling from a pile of rags that had been used to apply the linseed oil. The rags were "warm to the touch" and in an initial stage of combustion. The workers talked about the incident on their coffee breaks for some time afterward, and recognized the danger of fire from the use of linseed oil. After the incident, Kayan discussed the hazard

---

[2]The relevant portion of the transcript reads:

Q.: "Did you have any conversations with Mr. Van Itallie relative to the use of sprinklers at this facility?"

A.: "Yes, we did."

Q.: "What were those?"

A.: "We recommended it. I felt that the barn, as it existed, was a tinderbox, and it would be beneficial to have sprinklers. We discussed various types of sprinklers. We discussed the cost for sprinklers. And we discussed whether it was legally required. And since it was not, the option was . . . not to install them."

Q.: "So Mr. Van Itallie did not go along with your recommendation?"

A.: "That's correct."

with Stone and the workers, and instructed them how to dispose of rags safely.[3]

As the project neared completion, the crew prepared a "punch list" of tasks still to be performed. Stone had the responsibility of oiling and buffing the floors in the barn. At approximately 10 A.M. on January 26, 2000, Boucias applied oil to a small test patch of the floor in the main room using a rag. He then left the rag in an oil pan and departed for a meeting, leaving Stone and Moran to oil the rest of the floor, which covered approximately 2,500 square feet. Between noon and 1 P.M., Boucias returned and buffed a six-by-six-foot area of the floor. Boucias testified he oiled and buffed these small areas mainly because he was "just excited to see what the floor would look like." Afterward, he and Kayan went across the street for a meeting at van Itallie's garage and stayed there until 4 P.M. Boucias then walked back to the barn to retrieve his jacket and left for the day, having done no further work at the barn.

Stone testified that he used a lamb's wool mop to apply the oil to the floor that day, as well as paint brushes to apply it to the edges. He also used two rags, one in his back pocket to wipe his hands, and another he left lying on the floor outside the main room so that he could step on it. He testified he did not use the rags to apply the oil to the floor, and that they had "very little" oil on them. After applying the oil, Stone buffed the floor, finishing his work by approximately 3:30 P.M. Before departing, Stone left the mop wrapped in a plastic bag on the second floor of the barn, and hung the rags over a "cow stanchion" in the hallway on the first floor. He removed the buffer pad and placed it on top of the buffer, which was left in the first floor hallway as well. He did not testify to soaking any of the items in water after using them.

Shantigar's expert testified that the fire started that evening in the hallway where Stone had left the oily rags. He determined the cause to be spontaneous combustion of the linseed oil, rags, and other materials in the hallway. On cross-examination, the

[3]The label on the container of BioShield, evidence of which was introduced at trial, cautioned that "[o]il-soaked rags are self-combustible and should be discarded in a water-filled container."

expert testified it was possible that fires could have ignited simultaneously on different floors of the barn.

Shantigar filed suit against both Bear Mountain and Cove for negligence and breach of contract. In December, 2001, Shantigar settled with Cove for $300,000. Cove then filed an unopposed motion to dismiss Bear Mountain's cross claim for contribution, and for entry of separate and final judgment, which was allowed. The claims against Bear Mountain proceeded to trial before a jury in May, 2002.

The jury found that Bear Mountain did not breach its contract with Shantigar, and was not negligent in the performance of its work on the project. The jury did find that Bear Mountain was negligent "in the supervision of others on the project," and that its negligence proximately caused the damage to the barn. The jury also found that Shantigar was negligent and that its negligence was a proximate cause of the fire. Having made such a finding, the jurors were instructed to allocate percentages of fault to Shantigar and Bear Mountain that would total one hundred per cent. As previously noted, the jury found Shantigar sixty per cent at fault and Bear Mountain forty per cent.

The judge therefore ordered judgment for Bear Mountain. See G. L. c. 231, § 85.[4] Shantigar then filed a motion to amend the judgment, for judgment notwithstanding the verdict, and for a new trial. The judge denied the motion, and Shantigar appealed from both the judgment and the denial of the motion. We granted Shantigar's application for direct appellate review.

2. *G. L. c. 231, § 85.* We first address Bear Mountain's claim that Shantigar did not preserve the issue of comparative liability for appellate review. After the judge charged the jurors, but before they retired to deliberate, the following exchange took place at sidebar:

---

[4]General Laws c. 231, § 85, provides, in pertinent part: "Contributory negligence shall not bar recovery in any action . . . to recover damages for negligence . . . if such negligence *was not greater* than the total amount of negligence attributable to the person or persons against whom recovery is sought . . ." (emphasis added). In other words, the plaintiff in a single-defendant case may not recover if found to be more than fifty per cent at fault. See *Zeller* v. *Cantu*, 395 Mass. 76, 79 (1985). See also Glannon, Liability of Multiple Tortfeasors in Massachusetts: The Related Doctrines of Joint and Several Liability, Comparative Negligence and Contribution, 85 Mass. L. Rev. 50, 54 (2000) (Glannon).

THE PLAINTIFF'S COUNSEL: "That means Cove should be listed on the comparative negligence slip."

THE JUDGE: "Cove what?"

THE PLAINTIFF'S COUNSEL: "On the negligence. Because if they are going to consider all the negligence —"

THE JUDGE: "I specifically took Cove off because the jury — it would so mislead the jury when I tell them they are only to consider those —. So your objection is noted."

Bear Mountain claims that the above statements by counsel fail to comport with Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974), because he did not make a formal objection to a jury instruction, and did not state the reason underlying his purported objection. See *Flood* v. *Southland Corp.*, 416 Mass. 62, 66 (1993). More applicable perhaps is Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), which governs special verdicts. To preserve rights under rule 49 (a), "a party must lodge an objection to the omission of any issue in the special questions before the jury retires." *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 852 (1983), citing *Cote* v. *Estate of Butler*, 518 F.2d 157, 160 (2d Cir. 1975). In our view, however, the requirements of either rule were met. The plaintiff's counsel clearly took issue with the proposed verdict slip and was attempting to explain why he thought Cove should be included. The judge acknowledged an understanding of the issue but nevertheless declined counsel's request. See *Flood* v. *Southland Corp.*, *supra*. Moreover, he expressly stated to counsel, "[Y]our objection is noted." See *Rotkiewicz* v. *Sadowsky*, 431 Mass. 748, 752 (2000). The matter therefore is properly before us. We now turn to the question whether G. L. c. 231, § 85, compelled the inclusion of Cove in the jury's apportionment of negligence.

Shantigar advances several reasons why the Massachusetts comparative negligence statute requires apportionment of negligence for settling defendants. First, it argues the mandatory language of the statute is clear and unambiguous. It also asserts that the jury's apportionment of negligence was incompatible with their factual finding. It claims that excluding Cove from the jury verdict slip contravenes the legislative intent of the

statute. Finally, Shantigar contends that reversing the judge's ruling will promote the public policy of encouraging settlements among the parties.

The comparative negligence statute provides, in relevant part: "Contributory negligence shall not bar recovery in any action . . . to recover damages for negligence . . . if such negligence was not greater than the total amount of negligence attributable to the person or persons *against whom recovery is sought,* but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made. In determining by what amount the plaintiff's damages shall be diminished in such a case, the negligence of each plaintiff shall be compared to the total negligence of all persons *against whom recovery is sought.* The combined total of the plaintiff's negligence taken together with all of the negligence of all *defendants* shall equal one hundred per cent"[5] (emphasis added). G. L. c. 231, § 85. In the more than thirty years since the Legislature rewrote the statute in 1973, St. 1973, c. 1123, § 1, no Massachusetts case has squarely resolved the question whether a tortfeasor who has settled should be included as a "defendant" under § 85 for purposes of apportioning percentages of liability. See *Woods* v. *O'Neil,* 54 Mass. App. Ct. 768, 777 n.13 (2002), quoting *Laveck* v. *Pascoe Pizza, Inc.,* 29 Mass. App. Ct. 935, 938 n.6 (1990).

Shantigar argues that the judge failed to comply with the clear mandate of G. L. c. 231, § 85, because its negligence was not compared with the negligence of both parties against whom recovery was sought. Bear Mountain contends that the statute requires comparison only with that of active participants at trial, i.e., "persons against whom recovery *is* sought" or "defendants" (emphasis added). *Id.* We think that the plain language of § 85 supports the latter interpretation. The statute does not direct the

[5]Before it was rewritten by St. 1973, c. 1123, § 1, the statute provided, in pertinent part: "Contributory negligence shall not bar recovery in any action . . . to recover damages for negligence . . . if such negligence was not as great as the negligence of the *person* against whom recovery is sought . . . . In any such action . . . the jury shall return a special verdict, which shall state . . . the degree of negligence of each *party,* expressed as a percentage." G. L. c. 231, § 85, as appearing in St. 1969, c. 761, § 1. See *Graci* v. *Damon,* 6 Mass. App. Ct. 160, 162 n.1, *S.C.,* 376 Mass. 931 (1978).

jury to apportion negligence among all tortfeasors who may
have caused the injury, only those against whom recovery "is"
sought. See Glannon, Liability of Multiple Tortfeasors in Mas-
sachusetts: The Related Doctrines of Joint and Several Liability,
85 Mass. L. Rev. 50, 60 (2000) (Glannon) ("only a licentious
reading of [§ 85] would assess negligence to all tortfeasors
who may have contributed to the injury"). Having settled its
claim against Cove, Shantigar was not seeking recovery against
Cove at the time the case was submitted to the jury.

Shantigar alternatively argues that omitting Cove from the
verdict slip produced an artificial result that is inconsistent with
the jury's finding of fact, as well as the plain meaning of the
statute. General Laws c. 231, § 85, mandates that the "combined
total of the plaintiff's negligence taken together with all of the
negligence of all *defendants* shall equal one hundred per cent"
(emphasis added). Shantigar claims that the jury implicitly
found Cove negligent, and therefore the combined total of the
negligence of Shantigar, Bear Mountain, *and Cove* exceeded
one hundred per cent. This argument assumes, first, that the jury
were referring to Cove when they found Bear Mountain
negligent in its supervision of "others."[6] Even if we accept this
proposition, the argument also assumes that Cove — which
Shantigar had discharged from liability some five months before
trial — was still a "defendant" for purposes of the statute. The
clause on which Shantigar relies, however, must be read in
conjunction with the clause that directs a comparison of the
plaintiff's negligence to that of "all persons against whom
recovery is sought." See *Commonwealth* v. *Woods Hole, Mar-
tha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618
(1967), quoting *Bolster* v. *Commissioner of Corps. & Taxation*,
319 Mass. 81, 84-85 (1946) ("enactment considered as a whole
shall constitute a consistent and harmonious statutory

---

[6]As Bear Mountain points out in its brief, the jury may well have concluded
that Bear Mountain was negligent in supervising its employee, Brandon Bou-
cias, who also had oiled and buffed the floor on the day of the fire. Indeed,
although Kayan was listed as the construction supervisor on the building
permit, Shantigar had been paying Cove directly for about one year. Stone,
Cove's owner, even testified that van Itallie was the "Boss" and that he,
Stone, was not acting under Kayan's supervision or control at the time of the
fire.

provision"). At the time the case was submitted to the jury, Cove was no longer a defendant against whom recovery "is sought."[7] Compare Conn. Gen. Stat. § 52-572h(b) (2003) (specifying that "persons against whom recovery is sought" includes "settled or released persons").[8]

Last, Shantigar asserts that if Cove had been included on the verdict slip, the change in the apportionment calculus would have resulted in a verdict in which Shantigar's negligence fell below the total amount of negligence attributable to the negligence of Cove and Bear Mountain, enabling Shantigar to recover damages from Bear Mountain (minus the $300,000 settlement amount with Cove). Not only does Shantigar's proposal run afoul of the plain language of the statute, it also calls for speculation. "We do not know how the jury might have allocated negligence had they been instructed to allocate negligence" among Shantigar, Bear Mountain, *and* Cove. See *Laveck* v. *Pascoe Pizza, Inc., supra* at 936. Given the evidence at trial, we do not assume that including Cove on the verdict slip would have reduced Shantigar's apportioned liability. Moreover, allocating negligence to someone who was not actually litigating the question at trial does not provide a sound basis to make such an allocation. See *Composto* v. *Massachusetts Bay Transp. Auth.*, 48 Mass. App. Ct. 477, 479 n.4 (2000).

Shantigar next claims that excluding from the jury slip a defendant who has settled with the plaintiff contravenes the

[7]We further note that the exclusion of Cove from the jury verdict slip was consistent with Superior Court practice. See *Goulet* v. *Whitin Mach. Works, Inc.*, 399 Mass. 547, 556-557 (1987) (jury apportioned percentages of negligence between plaintiff and defendant, omitting settling defendant from calculus); *Composto* v. *Massachusetts Bay Transp. Auth.*, 48 Mass. App. Ct. 477, 479 n.4 (2000) (during colloquy with defendant's counsel, trial judge refused to ask jury to determine defaulted defendant's negligence because it would "confuse the issue"). See also Glannon, *supra* at 59-60 ("Superior Court practice evidently has varied on the point, though anecdotal evidence suggests that absent tortfeasors are rarely included in the verdict slip" [footnotes omitted]). But see *Laveck* v. *Pascoe Pizza, Inc.*, 29 Mass. App. Ct. 935, 936 (1990) (trial judge included settling defendant on jury verdict slip).

[8]Connecticut's comparative negligence statute provides that a plaintiff's negligence must not exceed "the combined negligence of the person or persons against whom recovery is sought including settled or released persons." Conn. Gen. Stat. § 52-572h(b) (2003).

Legislature's intent. Shantigar contends that when interpreting a statute, we must consider "the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated," *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934), and that "[t]he purpose of G. L. c. 231, § 85, was to ameliorate the harsh result of the contributory negligence rule and 'permit recovery by a plaintiff whose negligence was not greater than the negligence of the defendant.' "[9] *Zeller* v. *Cantu*, 395 Mass. 76, 79 (1985), quoting *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 438 n.5 (1980).

Shantigar relies on *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342 (1983), and *Graci* v. *Damon*, 376 Mass. 931 (1978), to assert that the court "recognized that the goal of the comparative negligence statute is effectuated by requiring the negligence of the plaintiff be 'compared with the total negligence of all defendants' rather than with each individual defendant." Allowing the jury to compare Shantigar's negligence only to that of Bear Mountain, Shantigar argues, was the same comparison rejected in *Graci* v. *Damon*, *supra*. However, that case did not consider whether to include a settling defendant in the apportionment of liability, see *Graci* v. *Damon*, 6 Mass. App. Ct. 160, 161-163, *S.C.*, 376 Mass. 931 (1978), thus Shantigar's reliance is misplaced.[10] Moreover, in *Correia* v. *Firestone Tire & Rubber Co.*, *supra* at 350-352, the court held that a negligent employer who is immune from suit by virtue of having paid workers' compensation benefits on the death of injured employee may not be included in the jury's negligence

[9]The contributory negligence rule, which Massachusetts followed for more than one century, dictated that a plaintiff could not recover if his own negligence was a contributory cause of his injury. See *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 436 (1980). The rule's failure to meet the economic and social needs of modern society spurred the change to our comparative negligence scheme. See Mooney, Massachusetts Adopts the Doctrine of Comparative Negligence, 5 New Eng. L. Rev. 79, 82 (1969).

[10]Rather, the issue in that case was whether "the negligence of the plaintiff should be compared with that of each individual defendant [who participated in the trial,] rather than making a comparison between the negligence of the plaintiff and the negligence of all defendants [at trial] combined." *Graci* v. *Damon*, 376 Mass. 931, 931 (1978). The Appeals Court concluded, and we agreed, that it was the latter. See *id.* See also *Graci* v. *Damon*, 6 Mass. App. Ct. 160, 167-171 (1978).

calculus under G. L. c. 231, § 85. See *id.* at 350 (noting workers' compensation statute "withdraw[s] from the pool of available defendants and contributors any employer who pays compensation benefits"). See also *Allen* v. *Chance Mfg. Co.,* 873 F.2d 465, 467 (1st Cir. 1989), citing *Correia* v. *Firestone Tire & Rubber Co., supra* at 346-352 (under § 85, "a jury must apportion negligence between only the plaintiff and the defendant; the fault of non-parties . . . is not to be taken into account").

Bear Mountain asserts, and we agree, that the removal of absent tortfeasors from the jury's consideration comports with the Legislature's intent and is consistent with the Massachusetts statutory schemes of joint and several liability, and contribution. Under our current system of joint and several liability, a plaintiff injured by more than one tortfeasor may sue any or all of them for her full damages. See *Kabatchnick* v. *Hanover-Elm Bldg. Corp.,* 331 Mass. 366, 368 (1954); *Mitchell* v. *Hastings & Koch Enters., Inc.,* 38 Mass. App. Ct. 271, 280 (1995). See also Glannon, *supra* at 51. The purpose of having the fact finder assign liability percentages is merely "to ascertain the negligence percentage of the plaintiff, so that her award of damages can be reduced to reflect her negligence." *Id.* at 52. Tortfeasors who pay more than their "pro rata" (equal) share of damages may then seek partial reimbursement, or contribution, from other joint tortfeasors, see G. L. c. 231B, § 1; Glannon, *supra* at 62, although tortfeasors who settle with the plaintiff prior to entry of judgment are insulated from claims for contribution from the remaining defendants (who are then entitled to a setoff in the judgment equal to the settlement amount). See G. L. c. 231B, § 4. See also Glannon, *supra* at 65.

By contrast, in jurisdictions that impose several liability, tortfeasors pay according to their percentage of fault. See Glannon, *supra* at 52 n.12. Such jurisdictions are more likely to include at least some absent tortfeasors in the negligence calculus. See *Fabre* v. *Marin,* 623 So. 2d 1182, 1185 (Fla. 1993), rev'd on other grounds, *Wells* v. *Tallahassee Memorial Regional Med. Ctr., Inc.,* 659 So. 2d 249 (Fla. 1995) (construing Florida comparative negligence statute to allocate fault to all participants to action, based on State Legislature's curtailment of joint and

several liability). See also Note, Apportioning Responsibility to Immune Nonparties: An Argument Based on Comparative Responsibility and the Proposed Restatement (Third) of Torts, 82 Iowa L. Rev. 1293, 1305 (1997) ("A majority of states with a pure or modified form of several liability that have addressed the issue allow evidence of nonparty fault generally to be introduced into the distribution calculus" [footnote omitted]). Significantly, Massachusetts has declined previous opportunities to eliminate joint and several liability (a system, we note, that favors plaintiffs because it places the risk of insolvent defendants on codefendants rather than on the injured party) in favor of imposing fault-based liability on all parties. See *Zeller* v. *Cantu, supra* at 81; *Graci* v. *Damon,* 6 Mass. App. Ct. 160, 168-170 (1978). Moreover, our "modified" comparative negligence rule theoretically could allow a plaintiff who is as much as fifty per cent at fault to recover from a codefendant who is no more than one per cent at fault. See Glannon, *supra* at 54. Although the omission of a settling tortfeasor from the jury's consideration might work unfavorably for a plaintiff, as it did in this case, it does not violate the principles of joint and several liability, contribution, or comparative negligence, and is indeed consistent with them.

Finally, Shantigar argues that omitting a settling defendant from the verdict slip may discourage plaintiffs from settling with any defendant, because the jury's allocation may not fairly reflect the plaintiff's proportionate fault. See Glannon, *supra* at 60. Just because the system is imperfect does not mean it is unjust. Indeed, it is no less rational than our previous contributory negligence rule, and it is certainly much less harsh on plaintiffs. See *Zeller* v. *Cantu, supra.* Plaintiffs who wish to avoid the potential pitfalls of settling with one tortfeasor need not settle with any. They may always proceed to trial against all tortfeasors not immune from suit.

We recognize that the Uniform Comparative Fault Act[11] and numerous States, including some with comparative negligence

---

[11]The relevant portion provides: "In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released [from liability] . . . the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories . . . indicating

statutes that use language similar to ours, require apportionment of negligence to absent tortfeasors. See, e.g., *Inland/Riggle Oil Co.*, 925 P.2d 1083, 1086 (Colo. 1996); *Walker* v. *Kroger Grocery & Baking Co.*, 214 Wis. 519, 535-536 (1934). Interpreting § 85 in lockstep with those jurisdictions, however, without consideration of the unique statutory schemes of each State could undermine the balance of equities — some favoring plaintiffs and others favoring defendants — that is achieved by our own system.[12] See Glannon, *supra* at 52 ("The [Massachusetts] liability regime as a whole involves the interaction of common law joint and several liability with two statutory schemes — comparative negligence and contribution"). By requiring the fact finder to apportion one hundred per cent of the negligence among only those who participate in the trial, the parties equally shoulder the burden of persuading the fact finder as to how to allocate fault. Although some commentators have opined that including absent tortfeasors in the negligence calculus results in a more accurate apportionment of liability, see, e.g., Glannon, *supra* at 60, "we are precluded from 'making any decision in the name of equity which would undercut

. . . the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability . . . ." Uniform Comparative Fault Act § 2, 12 U.L.A. 135-136 (Master ed. 1996).

[12]For example, unlike Massachusetts, Colorado generally imposes several liability with no right of contribution, see Colo. Rev. Stat. § 13-21-111.5 (LexisNexis 2003), while Wisconsin imposes joint and several liability only on defendants found to be fifty per cent or more negligent. See Wis. Stat. § 895.045 (West 1997). This is because Wisconsin requires comparison of a plaintiff's negligence to each individual defendant's rather than the combined negligence of multiple defendants, see *id.*, an approach that, as previously noted, Massachusetts has expressly rejected. See *Graci* v. *Damon*, 6 Mass. App. Ct. 160, 167-171 (declining to follow so-called "Wisconsin rule"). Indeed, of the seven other States that have adopted a comparative negligence rule while retaining traditional joint and several liability, none has statutory or common-law schemes governing comparative negligence and contribution identical to ours. See Ark. Code Ann. §§ 16-64-122 (Michie Supp. 2003), 16-61-203 (LexisNexis 1987); Del. Code Ann. tit. 10, §§ 6301, 8132 (Michie 1999); Me. Rev. Stat. Ann. tit. 14, § 156 (West 1980); Mich. Comp. Laws §§ 600.2925a, 500.2925b, 600.6304 (West 2000); R.I. Gen. Laws §§ 9-20-4, 10-6-2 (Michie 1997); S.C. Code Ann. § 15-38-20 (Supp. 2003); W. Va. Code Ann. § 55-7-13. See also *Nelson* v. *Concrete Supply Co.*, 303 S.C. 243, 245 (1991) (adopting judicially created comparative negligence rule); *Bradley* v. *Appalachian Power Co.*, 163 W. Va. 332, 342 (1979) (same).

the legislative scheme.' " *Zeller* v. *Cantu, supra* at 83, quoting *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 349 (1983). See *Liberty Mut. Ins. Co.* v. *Westerlind*, 374 Mass. 524, 527 (1978) (denying joint tortfeasor right of contribution or indemnity from negligent employer who paid workers' compensation benefits, based on statutory scheme).

Our reading of the language in G. L. c. 231, § 85, in light of our previous interpretations of the Massachusetts statutory schemes governing liability of multiple tortfeasors, persuades us that the statute applies only to named parties who participate in the trial. See *Mills* v. *Brown*, 303 Or. 223, 231 (1987) (relying on interpretations of Oregon statutes to restrict comparative fault analysis to parties still in case when submitted to fact finder).[13] Changes in the law are for the Legislature. See *Zeller* v. *Cantu, supra* at 81; *Liberty Mut. Ins. Co.* v. *Westerlind, supra.*

3. *Admission of evidence.* Shantigar also claims the judge improperly admitted evidence of its decision not to install a sprinkler system in the barn. Shantigar had filed a motion in limine seeking to exclude all such evidence at trial. After hearing argument, the judge deferred ruling on the matter. The judge later overruled Shantigar's objection to the offer of such evidence during the cross-examination of van Itallie.

Massachusetts law recognizes that in the absence of a statutory duty to install sprinklers or other specialized fire apparatus, a jury could find such a duty when the owner knows of a "particular danger of fire." *Little* v. *Lynn & Marblehead Real Estate Co.*, 301 Mass. 156, 161 (1938). See *Cigna Ins. Co.* v. *OY Saunatec, Ltd.*, 241 F.3d 1, 19-20 (1st Cir. 2001). Shantigar argues it had no knowledge of a particular danger of fire which would have triggered a duty to install a sprinkler system. However, van Itallie acknowledged the ancient wooden barn was a fire hazard, and that his architect had advised him to install sprinklers because the barn was, in his words, a "tinderbox." The jury reasonably could conclude that van Itallie

---

[13]Oregon law now expressly requires a jury to compare the fault of the plaintiff "with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, *and* the fault of any person with whom the claimant has settled" (emphasis added). Or. Rev. Stat. § 18.470(2) (2001).

was aware of a particular danger of fire. There was no error in the admission of evidence concerning his decision not to install a fire suppression system.

*Judgment affirmed.*