158                    61 Mass. App. Ct. 158 (2004)

Savers Property & Casualty Insurance Company *v.* Admiral Insurance Agency, Inc.

SAVERS PROPERTY & CASUALTY INSURANCE COMPANY *vs.*
ADMIRAL INSURANCE AGENCY, INC.

No. 02-P-927.

Suffolk. December 10, 2003. - May 10, 2004.

Present: GREENBERG, GRASSO, & GREEN, JJ.

*Insurance,* Binder, Misrepresentation. *Contract,* Binder, Indemnity, Misrepresentation, Reinsurance agreement. *Indemnity. Negligence,* Insurance company, Misrepresentation, Comparative, Imputed. *Damages,* Mitigation, Liquidated damages. *Practice, Civil,* Instructions to jury, Damages. *Massachusetts Port Authority. Snow and Ice.*

In a civil action arising out of the defendant's issuance on behalf of the plaintiff of an insurance binder that provided coverage for excess snow accumulation at an airport, the judge properly granted the defendant's motion for a directed verdict with respect to the plaintiff's common-law indemnification claim, where the facts of the case did not support the application of traditional principal-agency and restitution concepts to the relationship between the parties, in that the defendant was the plaintiff's licensed agent only for the limited purpose of enabling a third party, on behalf of the plaintiff, to issue insurance binders in Massachusetts, and therefore, if the plaintiff was entitled to indemnification from any party, it was that third party, not the defendant; moreover, the judge properly concluded that the plaintiff had no legal basis for indemnity under common-law tort-based indemnification principles, and that, because there was no agreement between the parties, there was no basis from which an implied obligation on the part of the defendant to indemnify the plaintiff could arise. [163-165]

In a civil action arising out of the defendant's issuance on behalf of the plaintiff of an insurance binder that provided coverage for excess snow accumulation at an airport, the judge committed no error in refusing to give a requested jury instruction on reinsurance, where the availability of reinsurance and the plaintiff's determination not to reinsure the risk was not prohibited collateral source evidence, but evidence that bore on whether the plaintiff was comparatively negligent; moreover, there was no likelihood that the jury misused the evidence erroneously labeled "collateral source" to reduce an award to which the plaintiff was lawfully entitled. [165-166]

The judge in a civil action arising out of the defendant's issuance on behalf of the plaintiff of an insurance binder that provided coverage for excess snow accumulation at an airport did not err in allowing the jury to award dam-

ages that were the subject of precise mathematical calculation, where the facts as to the comparative negligence of the parties and the harm suffered by the plaintiff were in dispute, and where the plaintiff had an obligation to mitigate its damages. [167-168]

In a civil action arising out of the defendant's issuance on behalf of the plaintiff of an insurance binder that provided coverage for excess snow accumulation at an airport, the judge did not err in instructing the jury, over the plaintiff's objection, that they could impute the negligence of a third party (the plaintiff's agent) to the plaintiff, where the plaintiff, having put the third party in a position to act negligently by failing to adhere to the parameters of its agency or by failing to keep the plaintiff apprised of the risks for which the third party and the defendant were pursuing coverage, was comparatively negligent for the losses it sustained as a result of the third party's conduct. [168-169]

In a civil action arising out of the defendant's issuance on behalf of the plaintiff of an insurance binder that provided coverage for excess snow accumulation at an airport, the judge properly granted the defendant's motion for a directed verdict on the plaintiff's claim of negligent misrepresentation, where the plaintiff offered no evidence that the defendant made any representations, let alone misrepresentations, for the guidance of the plaintiff on which the plaintiff relied to its pecuniary detriment. [169]

CIVIL ACTION commenced in the Superior Court Department on June 21, 1996.

The case was tried before *Allan van Gestel, J.,* and a motion for judgment notwithstanding the verdict, additur, or alternatively a new trial was heard by him.

*Myles W. McDonough (John P. Ryan* with him) for the plaintiff.

*Richard F. Wholley* for the defendant.

GRASSO, J. The present action arises out of the issuance of an insurance binder by Admiral Insurance Agency, Inc. (Admiral), on behalf of Savers Property & Casualty Insurance Company (Savers), to the Massachusetts Port Authority (Massport) that provided $2 million in coverage for excess snow accumulation at Logan Airport for the period from December 15, 1995, to June 1, 1996. Following a blizzard on January 7 and 8, 1996, and a claim for coverage by Massport, Savers paid the entire binder limit. On June 21, 1996, Savers filed a three-count complaint against Admiral, alleging negligence, common-law indemnity, and negligent misrepresentation with respect to 'Admiral's issuance of the binder.

At trial, the judge allowed Admiral's motion for a directed

verdict with respect to Savers's claims for common-law indemnity and negligent misrepresentation. On the remaining negligence count, the jury found both Savers and Admiral negligent in the binding of the snow accumulation insurance for Massport, attributing eighty-five percent of the fault to Savers and fifteen percent of the fault to Admiral. The jury awarded Savers damages of $40,000. Judgment entered for Admiral.[1] Savers's motion for judgment notwithstanding the verdict, additur, or, alternatively, for a new trial was denied.

On appeal, Savers contends that the trial judge erred in (1) denying it judgment as matter of law and allowing Admiral's motion for a directed verdict on Savers's common-law indemnity claim; (2) declining to give a requested jury instruction on the issue of reinsurance; (3) allowing the jury to determine damages that were subject to precise mathematical calculation and instructing the jury that Savers had a duty to mitigate its damages; (4) instructing the jury that the allegedly negligent conduct of Customized Worldwide Weather Insurance Agency, Inc. (CWW), Savers's agent, could be imputed to Savers; (5) denying Savers judgment as matter of law on its claim alleging negligence by Admiral; and (6) allowing Admiral's motion for a directed verdict on Savers's claim for negligent misrepresentation. For the reasons that follow, we affirm.

1. *Background.* Savers is an insurance company duly organized under the laws of the State of Missouri. On February 18, 1992, Savers entered into an agency agreement with CWW that authorized CWW, inter alia, to "[b]ind, issue, endorse, and cancel policies of weather business on behalf of and for [Savers]." To the extent that CWW delegated any of its authority to another person or firm, CWW remained liable for the

---

[1]"Our comparative negligence statute provides that the plaintiff's contributory negligence shall not bar recovery *if* the plaintiff's negligence was not greater than the total amount of negligence attributable to the parties against whom recovery is sought" (emphasis added). *Colter* v. *Barber-Greene Co.*, 403 Mass. 50, 62 (1988). See *Shantigar Foundation* v. *Bear Mtn. Builders*, 441 Mass. 131, 137, 141 (2004). See G. L. c. 231, § 85. If a plaintiff is more than fifty percent responsible for its own injuries, the plaintiff's conduct will bar any recovery. See *Colter* v. *Barber-Greene Co., supra* at 63. Because the jury found that Savers had been eighty-five percent negligent, Savers was not. entitled to recoup any damages from Admiral. *Shantigar Foundation* v. *Bear Mtn. Builders, supra* at 135.

61 Mass. App. Ct. 158 (2004) . 161

Savers Property & Casualty Insurance Company *v.* Admiral Insurance Agency, Inc.

fulfillment of all of its obligations under the agency agreement and was "liable for all losses and expenses arising from any act, error or omission by a person or persons to whom authority was delegated." The remedy for any dispute arising between Savers and CWW with respect to any and all transactions or terms and conditions of the agency agreement was arbitration.

Because CWW was not licensed to transact insurance business in Massachusetts,[2] it worked with local agents (like Admiral) to bind adverse weather insurance policies. Savers had no contact with such local agents which, in all respects, dealt directly with CWW. Savers and CWW had a special application form for excess snow accumulation policies (the application form) which specified that the premium had to be paid in advance of coverage, that Savers and CWW had to accept the application before the policy could take effect, that only CWW could issue the binder or policy, and that the application had to be returned to CWW along with the premium payment for acceptance or rejection.

On August 10, 1994, CWW entered into a brokering-marketing agreement with Admiral that authorized Admiral to engage in the local marketing of municipal snowfall insurance coverage and to collect premiums prior to the commencement of coverage. CWW, in turn, would provide Admiral with price quotations and would pay Admiral monthly brokerage commissions. CWW represented to Admiral that it was the managing general agent for Savers.

On November 9, 1994, the Department of Banking and Insurance issued Admiral a license to act as an insurance agent for Savers. This license did not impose any limitations on Admiral's authority to issue insurance policies on behalf of Savers, and there was no agency agreement between the parties that would have restricted Admiral's authority to act on Savers's behalf.

During the spring and summer of 1995, Admiral communicated several quotations, calculated by CWW, to Frederick E. Penn Insurance Agency, Inc. (Penn), the insurance agency for Massport, for snow accumulation coverage at Logan Airport for

---

[2]An insurance agent must be licensed in Massachusetts in order to issue a policy or binder in the Commonwealth. See G. L. c. 175, § 163, as then in effect.

the upcoming winter. On September 11, 1995, Admiral sent the application form and a specimen policy to Penn.

Subsequently, the Massport board of directors approved the provision of insurance by CWW, and Admiral forwarded to Penn an invoice in the amount of $279,000. On October 2, 1995, Admiral issued the insurance binder to Massport, and several days later, Penn forwarded the premium payment to Admiral.[3] On October 12, 1995, Admiral wired the premium, less commissions, to CWW. CWW accepted the premium even though Massport did not send the completed application to Admiral until November 20, 1995, and CWW retained the premium without reporting it to Savers as required by their agency agreement.

Savers first learned about the issuance of the Massport binder on December 8, 1995, when it was notified by HIH Casualty & General Insurance Limited (HIH Casualty) that reinsurance on the London market, in the amount of $1.5 million, had been verbally confirmed with respect to the binder.[4] Savers contacted CWW and was informed that the excess snow accumulation coverage for Massport had not been bound.[5] Savers reiterated to CWW that Savers had not authorized CWW to provide insurance quotations or to issue a binder to Massport and that the establishment of the account was outside the scope of CWW's authority under their agency agreement. On January 3, 1996, after receiving new underwriting data from CWW on the Massport risk, Savers advised CWW that it still was not willing to accept the risk. On January 9, 1996, following the blizzard, Savers received a telephone call from a news reporter who wanted to confirm that Savers had issued an insurance policy to Massport for snow accumulation coverage. Savers then contacted Penn and was informed that, in fact, Massport had received an insurance binder from Admiral in October, 1995.

After paying Massport's claim for $2 million under the

---

[3]Savers asserts that at this moment it became irretrievably bound to the terms of the insurance binder issued to Massport.

[4]No reinsurance was ever obtained from the London market.

[5]In early August, 1995, Savers had rejected CWW's proposal for the provision of a three-year snow accumulation policy to Massport because Savers was averse to the length of the policy coverage period.

binder, Savers proceeded against CWW in arbitration, as required by their agency agreement, and was awarded $460,000. Savers then commenced the instant action against Admiral.[6]

2. *Indemnity of Savers by Admiral.* Savers asserts that the allowance of Admiral's motion for a directed verdict with respect to Savers's indemnification claim was erroneously premised on common-law tort-based indemnification principles applicable to parties who are joint tortfeasors vis-à-vis a third party, where contributory negligence can be a bar to recovery. Rather, Savers argues, the judge should have based his decision on common-law agency and restitution principles, which provide that an agent who, by his negligence, binds a principal to a contract, without authority, must indemnify the principal, irrespective of any purported contributory negligence by the principal. See *Southeastern Ins. Agency, Inc.* v. *Lumbermens Mut. Ins. Co.*, 38 Mass. App. Ct. 642, 647 (1995), *S.C.*, 423 Mass. 1008 (1996). Because the jury found that Admiral was fifteen percent negligent and awarded Savers damages, Savers maintains that it was entitled to judgment as matter of law on its claim for indemnification from its agent where the agent had neither actual nor apparent authority to bind it to the Massport risk,[7]

---

[6]Admiral, in turn, brought a third-party complaint against CWW for indemnification and contribution, which was decided adversely to Admiral on summary judgment. The motion judge reasoned that Admiral was not entitled to indemnification from CWW because it had issued a binder to Massport, at least in part, on a mistaken belief that it had the authority to do so. See note 8, *infra.* Admiral's contribution claim failed because CWW's liability in arbitration extinguished any cause of action that Savers may have had against CWW in tort. Common-law contribution requires that both joint tortfeasors be directly liable to the injured party. See *Liberty Mut. Ins. Co.* v. *Westerlind*, 374 Mass. 524, 526 (1978). Admiral did not file a cross appeal.

The motion judge's determination on the third-party complaint did not bind the trial judge or compel a conclusion that Admiral lacked authority to bind the Massport risk. See *Riley* v. *Presnell*, 409 Mass. 239, 242 (1991) (trial judge has authority to reconsider earlier summary judgment determination); *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 n.4 (1987).

[7]We pass over whether, absent direct knowledge by Admiral that it was not authorized to do so, G. L. c. 175, § 163, as then in effect provided Admiral with legal authority to bind the Massport risk. That statute provided in pertinent part: "Every company shall be bound by the acts of the person named in the license within the scope of his apparent authority as its acknowledged agent while such license remains in force."

and the insurer "proves [that the agent's] negligence was the proximate cause of its actual loss." *Ibid.*

We conclude that the facts do not support the application of traditional principal-agency concepts to the relationship between Savers and Admiral. We recognize that, pursuant to the license issued by the Department of Banking and Insurance, Admiral was a statutory agent of Savers. However, the facts here establish that Admiral was Savers's licensed agent for the limited purpose of enabling CWW, on behalf of Savers, to issue insurance binders in this Commonwealth. All of Admiral's dealings were with CWW, not with Savers, and the license itself imposed no limitations on Admiral's authority.[8] The agency agreement between Savers and CWW that spelled out the guidelines and restrictions pursuant to which Savers could be bound to snow accumulation insurance coverage was never supplied to Admiral by Savers or CWW, either in connection with Savers's licensing application or with the application form itself.

CWW held itself out to Admiral as Savers's managing general agent and never communicated any limitations on its authority to Admiral. For its part, Savers did not communicate with CWW's local agents, including Admiral. Consequently, Admiral never knew, either from Savers or from CWW, that there were any limitations on either CWW's or Admiral's authority to issue binders on Savers's behalf. In effect, CWW was acting as the "principal" vis-à-vis Admiral. It was CWW from which Admiral took instructions and CWW, not Savers, to which Admiral owed a duty of care. Compare Restatement (Second) of Agency § 5(1) (1958) (subagent is "a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible"). In consequence, Admiral was the agent of CWW only. Cf. *Estate*

---

[8] Brian Chambers, Admiral's commercial sales manager, gave conflicting testimony regarding whether Admiral believed that, by virtue of its license from the Department of Banking and Insurance, it could bind Savers to a policy for excess snow accumulation coverage, without any limitations, or whether Admiral believed that it needed the approval of CWW to issue the binder to Massport. It was for the jury to assess the credibility and weight to be accorded such conflicting testimony. See *Whitehall Co.* v. *Barletta*, 404 Mass. 497, 503 (1989).

*of Smith* v. *Underwood*, 127 N.C. App. 1, 14 (1997) ("If the agent hires the subagent to carry out the principal's request, the subagent is the agent of the agent only").

If Savers was entitled to indemnification from any party on common-law agency and restitution principles, CWW was that party. That binding arbitration limited Savers's recovery against CWW does not entitle Savers to recoup greater amounts from the only remaining available party, Admiral.

The trial judge reached a similar conclusion in his posttrial memorandum. He determined that where the jury heard conflicting testimony as to the relationships among Savers, CWW, and Admiral, they reasonably could have concluded that Savers had an agency relationship with CWW, but *not* with Admiral. As such, CWW's negligence was a proximate cause of Savers's loss. Cf. *New England Acceptance Corp.* v. *American Mfrs. Mut. Ins. Co.*, 4 Mass. App. Ct. 172, 180 (1976), *S.C.*, 373 Mass. 594 (1977).

The judge also did not err in concluding that Savers had no legal basis for indemnity under common-law tort-based indemnification principles. See *Stewart* v. *Roy Bros.*, 358 Mass. 446, 459 (1970). See also *Rathbun* v. *Western Mass. Elec. Co.*, 395 Mass. 361, 364 (1985) (indemnity allowed to party not itself free from fault only in exceptional circumstances). Moreover, because there was no agreement between the parties, there is no basis from which an implied obligation by Admiral to indemnify Savers could arise. *Id.* at 363.

3. *Requested jury instruction on reinsurance.* Savers asserts that the judge erred in refusing to give a requested jury instruction on reinsurance. In consequence, Savers continues, "the letter and rationale of the collateral source rule" were violated, and the jury specifically relied on evidence regarding reinsurance (that was prospective but never bound) in arriving at a damages award of $40,000. We disagree.

We recognize that exposing a jury to evidence that a "plaintiff has received other compensation for his injury, whether from an accident insurance policy, . . . from [workers'] compensation, . . . from an employer, . . . or from other sources" is generally not permitted because the receipt of such compensation does not lawfully reduce the plaintiff's damages, yet the jury might

use such evidence to refuse the plaintiff a verdict or reduce the plaintiff's damages to avoid unjust double recovery. *Goldstein* v. *Gontarz*, 364 Mass. 800, 808-809 (1974). *Corsetti* v. *Stone Co.*, 396 Mass. 1, 16-17 (1985). Here, however, the availability of reinsurance on the London market and Savers's determination not to reinsure the Massport risk is not collateral source evidence, but evidence that bore on whether Savers was comparatively negligent.[9]

In a case that centered on Admiral's negligence in binding the Massport risk, the issue of reinsurance was directly relevant, together with other evidence of the Savers-CWW relationship, to establish that Savers's actions, not Admiral's, were the cause of Savers's loss. As such, the jury could properly consider evidence of reinsurance to determine whether Savers had acted as a reasonably prudent insurance company when it discovered, prior to the blizzard that caused the loss, that reinsurance in the amount of $1.5 million had been verbally confirmed with respect to the Massport binder.

Moreover, there is no likelihood that the jury misused the evidence erroneously labeled "collateral source" to reduce an award to which Savers was lawfully entitled, rather than to evaluate the issue whether Savers was comparatively negligent. Although the judge did not give the precise instruction on reinsurance requested by Savers, he did generally instruct the jury not to consider collateral sources in deciding how to allocate damages. Further, based on the testimony of Marc Willner, see note 9, *supra,* the jury already knew that no reinsurance had been obtained on the Massport risk. In sum, the objected-to evidence of the availability of reinsurance was not prohibited collateral source evidence within the meaning of that rule, and the judge was not required to give the requested instruction.

---

[9]To establish that Savers's own negligence was the cause of its payment to Massport under the binder, Admiral sought to demonstrate that Savers did not act as a reasonably prudent insurance company would have acted in all the circumstances. See *Gilhooley* v. *Star Mkt. Co.*, 400 Mass. 205, 207 (1987); *Bacon* v. *Federal Kemper Life Assur. Co.*, 400 Mass. 850, 853-854 (1987). In this context, the jury heard testimony from Marc Willner, the individual responsible for Savers's snow removal insurance program, that Savers did not purchase reinsurance when presented with the opportunity to do so, which would have reduced its risk with respect to the Massport binder.

61 Mass. App. Ct. 158 (2004)          167

Savers Property & Casualty Insurance Company *v.* Admiral Insurance Agency, Inc.

4. *Damages award and mitigation.* Savers contends that the judge erred in allowing the jury to award damages that were the subject of precise mathematical calculation. Savers asserts that permitting the jury to calculate the damages allowed them to rely improperly on evidence of reinsurance and thereby limit its award to $40,000 rather than the $1,186,000 in damages that Savers lost as a result of Admiral's negligence.[10]

Preliminarily, Savers's argument concerning the assessment of damages fails because, where a party is more than fifty percent responsible for its own injuries, its conduct bars any recovery. See note 1, *supra.* Further, because there was no agency agreement between Savers and Admiral, there was no provision for liquidated damages with respect to Savers's cause of action. See *A-Z Servicenter, Inc.* v. *Segall,* 334 Mass. 672, 675 (1956). Where the facts were in dispute as to the comparative negligence of the parties and the harm suffered by Savers, particularly in light of its own negligence, it was the jury's duty to assess the damages. See *Kinnear* v. *General Mills, Inc.,* 308 Mass. 344, 349 (1941). The judge here did not abuse his discretion in refusing to add to the damages award. See *Loschi* v. *Massachusetts Port Authy.,* 361 Mass. 714, 715 (1972); *Freeman* v. *Wood,* 379 Mass. 777, 781 n.9 (1980); *Service Publications, Inc.* v. *Goverman,* 396 Mass. 567, 580-581 (1986).

Savers further argues that it did not have an obligation to mitigate its damages in this case. We disagree. "The general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on [its] part." *Burnham* v. *Mark IV Homes, Inc.,* 387 Mass. 575, 586 (1982). See *Brian* v. *B. Sopkin & Sons,* 314 Mass. 180, 183 (1943). On December 8, 1995, HIH Casualty notified Savers that reinsurance on the London market had been verbally confirmed, Savers was on notice that it may have been bound to provide snow removal coverage to Massport. At that point, Savers had a duty to investigate the

---

[10]Savers arrives at the sum of $1,186,000 by starting with $2,000,000, the payment that Savers made to Massport in full satisfaction of its insurance claim; subtracting $460,000, the amount of the arbitration award from CWW; and subtracting $354,000, the total payments that Savers received for insuring the Massport risk.

matter further, plan a course of action, and if necessary, secure reinsurance to spread its potential financial risk. Given its knowledge of past instances when CWW had not adhered to the scope of its agency authority, the notification from HIH Casualty should have spurred Savers into immediate action. Savers's contention that it would have incurred a statutory penalty by accepting the reinsurance is of no import where Marc Willner testified on cross-examination that, had he ascertained all of the pertinent facts on December 8, he would have secured the reinsurance.

5. *Negligence.* The focus of Admiral's defense to Savers's negligence claim was CWW's improper conduct. Savers claims that the judge erred in instructing the jury, over its repeated objections, that they could impute the negligence of CWW to Savers. We disagree.

A principal may be held liable for the tortious conduct of its agent, even where the principal has no knowledge of the agent's fraudulent scheme. See *New England Acceptance Corp.* v. *American Mfrs. Mut. Ins. Co.,* 373 Mass. 594, 597 (1977). Compare *Kansallis Fin. Ltd.* v. *Fern,* 421 Mass. 659, 669-670 (1996) (vicarious liability may exist where dishonest agent misuses apparent authority to perpetrate fraud on both principal and third party). Pursuant to its agency agreement with Savers, CWW had the authority to bind, issue, endorse, and cancel adverse weather insurance policies, including snow accumulation binders (subject to specified guidelines and restrictions). "[U]nder well settled principles of agency law, the authority of an insurance agent to sell insurance, unless limited by [its] principal, includes authority to do all acts which are incidental thereto or are reasonably necessary to effect such sales." *New England Acceptance Corp.* v. *American Mfrs. Mut. Ins. Co.,* 4 Mass. App. Ct. at 178. Here, CWW was acting within the scope of its agency when it entered into the brokering-marketing agreement with Admiral for the procurement of insurance clients in Massachusetts and within its apparent authority when it supported Admiral's efforts to secure the Massport risk. Having put CWW in a position to act negligently by failing to adhere to the parameters of its agency or by failing to keep Savers apprised of the risks for which CWW and Admiral were pursuing cover-

age, Savers was comparatively negligent for the losses it sustained as a result of CWW's conduct.[11] See *id.* at 180. This is especially true where Savers had knowledge that, in the past, CWW had acted outside the scope of its authority under the agency agreement and had failed to adhere to Savers's compliance standards. See note 9, *supra.* The negligence of CWW, as agent, could be imputed to Savers, as principal, and the judge did not err or abuse his discretion in so instructing the jury.[12]

6. *Negligent misrepresentation.* Savers asserts that the judge erred in allowing Admiral's motion for a directed verdict with respect to Savers's claim alleging negligent misrepresentation. "In order to recover for negligent misrepresentation[,] a plaintiff must prove that the defendant (1) in the course of his business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *Nota Constr. Corp.* v. *Keyes Assocs.,* 45 Mass. App. Ct. 15, 19-20 (1998). *Golber* v. *BayBank Valley Trust Co.,* 46 Mass. App. Ct. 256, 257 (1999). Savers's claim for negligent misrepresentation fails as matter of law because Savers offered no evidence that Admiral made any representations, let alone misrepresentations, for the guidance of Savers that Savers relied on to its pecuniary detriment.

7. *Disposition.* The judgment is affirmed. The order denying

---

[11]To the extent that CWW was acting outside the scope of its authority under the agency agreement, Savers has already been compensated for CWW's negligence in the arbitration award.

[12]Savers contends that the judge erred in denying its motion for a directed verdict and, subsequently, its motion for judgment notwithstanding the verdict on its claim alleging negligence by Admiral in issuing the binder to Massport. Savers also maintains that the evidence was insufficient as matter of law to warrant an inference that it had been comparatively negligent in this matter. These arguments merit little discussion.

Whether Admiral breached a duty to Savers was in sharp dispute. Moreover, the jury reasonably could have found that Savers had been negligent in failing to supervise CWW adequately, in continuing to maintain an agency relationship with CWW despite its past compliance problems, and in failing to secure reinsurance for the Massport risk.

the motion for judgment notwithstanding the verdict, additur, or alternatively a new trial is affirmed.

*So ordered.*