NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-421

STEPHEN B. CORN

vs.

BRIGHAM & WOMEN'S HOSPITAL & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Stephen B. Corn, a physician, brought this action in the Superior Court against defendants Brigham and Women's Hospital (BWH), Partners HealthCare System, Inc. (Partners), and physician James P. Rathmell.  The plaintiff's amended complaint alleged (1) employment discrimination on the basis of disability, in violation of G. L. c. 151B, against all defendants; (2) employment discrimination on the basis of disability under a theory of disparate impact, in violation of G. L. c. 151B, against BWH and Partners; (3) retaliation, in violation of G. L. c. 151B, against all defendants; (4) hostile work environment in violation of G. L. c. 151B, against all

---

[1] Partners Healthcare System, Inc., and James Rathmell.

defendants; (5) tortious interference with a contract against all defendants; (6) tortious interference with business relations against all defendants; (7) fraudulent and negligent misrepresentation, against BWH and Partners; and (8) quantum meruit, against BWH and Partners.  After a hearing, a Superior Court judge allowed the defendants' motions for summary judgment on all of the plaintiff's claims.  We affirm.

Background.  We recite the facts in the light most favorable to the plaintiff, the party opposing summary judgment. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016).

Partners is a hospital and physician network that includes BWH.  The plaintiff worked as an attending anesthesiologist at BWH beginning in 1991.  His duties included the clinical work of an anesthesiologist, specifically managing anesthesia for surgical cases, either personally or by supervising.  The plaintiff also performed nonclinical duties, including research and educational activities.

On October 17, 2006, BWH and Partners denied the plaintiff's particular request for accommodation of his irritable bowel syndrome (IBS) that he not be required to work in the operating room (OR) without the presence of another anesthesiologist.  In January 2011, BWH and Partners granted the plaintiff's renewed request not to work alone in the OR, but after another IBS "flare-up," the plaintiff became unable to

2

work, even with the accommodation.  The plaintiff ceased performing any clinical work and stopped treating patients after April 2011.

Beginning in July 2011, the plaintiff was granted long-term disability (LTD) benefits.[2]  In 2012, BWH transitioned the plaintiff to "honorary" status and recommended him for reappointment to an academic position at Harvard Medical School (HMS).  Honorary staff are "[f]ormer members of the Medical Staff" and "[o]ther distinguished professionals" who enjoy no clinical or admitting privileges and may not vote, hold office, or serve on BWH committees.

In June 2015, Rathmell became chief of BWH's anesthesiology department.  He met with the plaintiff in January 2016 to discuss the plaintiff's activities at BWH.  On March 14, 2016, Rathmell notified the plaintiff that his HMS academic appointment would not be renewed after his term concluded on October 30, 2016, and that his honorary staff status would terminate the same day.

Discussion.  1.  Standard of review.  We review a grant of summary judgment de novo.  See Bulwer, 473 Mass. at 680.  We view the evidence in the light most favorable to the nonmoving

_____

[2] The plaintiff will continue to receive LTD benefits, and BWH will pay the plaintiff's retirement contributions and postemployment health insurance, until he reaches age sixty-five.

3

party to determine whether, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Id.

2.  Discrimination claims.  To survive summary judgment on a claim of employment discrimination, an employee must produce prima facie evidence of membership in a protected class, harm, discriminatory animus, and causation.  See Bulwer, 473 Mass. at 680.  An employee's burden to establish "by the preponderance of the evidence a prima facie case of discrimination" is "not onerous."  Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 40 (2005).  The employee "must simply produce sufficient evidence that [the employer's] actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors" (quotation and citation omitted).  Id.

a.  Timeliness of pre-2016 claims.  A lawsuit for employment discrimination under G. L. c. 151B must be filed within three years of when the employee knows or should have known that the employer's alleged discriminatory conduct caused the employee harm.[3]  See G. L. c. 151B, § 9; Silvestris v. Tantasqua Regional Sch. Dist., 446 Mass. 756, 766 (2006).  More specifically, a cause of action for disability discrimination

_____

[3] An employee also is required to file an administrative charge with the Massachusetts Commission Against Discrimination (MCAD) within 300 days of the alleged act of discrimination. See G. L. c. 151B, § 5.  The plaintiff filed an MCAD complaint on January 5, 2017.

4

accrues when the employee knew or should have known that the employer had refused to participate in the interactive process of determining a reasonable accommodation, or refused to make such an accommodation once one had been identified. See Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination, 441 Mass. 632, 643-644 (2004) (Ocean Spray).

The plaintiff filed his Superior Court complaint on March 13, 2019. Therefore, any claims for harmful employment acts that occurred prior to March 13, 2016, which the plaintiff knew or should have known about, are time barred. The plaintiff does not dispute that his initial request for accommodation was denied in 2006. Although in January 2011, BWH and Partners allowed the plaintiff's renewed request for an accommodation, the accommodation was discontinued when the plaintiff became ill in April, 2011. In July 2011, the plaintiff took LTD leave, and thereafter did not perform clinical duties, treat patients, or work in any other compensated capacity for BWH or Partners. We thus conclude, as did the motion judge, that the plaintiff had actual or constructive notice of his disability discrimination claims as early as 2006 and no later than mid-2011. His G. L. c. 151B claims for disability discrimination, retaliation, and hostile work environment based on pre-2016 acts by BWH and Partners were time barred. See Silvestris, 446 Mass. at 766.

5

b.  Continuing violation.  We are not persuaded by the plaintiff's assertion that the statute of limitations does not apply to the defendants' pre-2016 behavior because their conduct constituted a "continuing violation" beginning in 2006 and culminating in his "termination" in 2016.  The narrow exception to the limitations period created by the continuing violation doctrine is applicable only in situations involving systemic or serial violations.[4]  See Silvestris, 446 Mass. at 768-769; Cuddyer v. Stop & Shop Supermkt. Co., 434 Mass. 521, 531-532 (2001).  The exception requires proof that (1) there is at least one identifiable discriminatory incident that occurred within the limitations period, (2) the timely discriminatory act was substantially related to the untimely acts, and (3) the untimely act did not trigger an awareness and duty to assert a protected right.  See Ocean Spray, 441 Mass. at 642-643.

Here, we need not decide whether the plaintiff's 2016 "termination" was a discriminatory incident that was substantially related to the alleged pre-2016 acts[5] because, as

---

[4] The statute of limitations is not to be confused with the statute of repose that applies in a medical malpractice action against a physician.  G. L. c. 260, § 4, second par.  See Bellmar v. Moore, 495 Mass. 578, 581-582 (2025).

[5] We note, however, that Rathmell discontinued the plaintiff's "honorary" designation more than five years after the plaintiff stopped working as a clinical anesthesiologist, and there is no evidence that the plaintiff requested any accommodation in the intervening period.

discussed above, the plaintiff had clear and unequivocal notice of the defendants' refusal to accede to his request for accommodation by 2011 at the latest. We are not persuaded by the plaintiff's argument that he was not aware of the "full extent" of the defendants' "misconduct" until he learned during discovery in this case that there was no hospital policy prohibiting his requested accommodation and other anesthesiologists were "given the accommodations that were denied to him." Similarly, that the plaintiff learned years later through discovery that colleagues may have "mocked" him privately by creating a betting pool about when he would call in sick cannot retroactively support his claim of hostile work environment. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) (hostile work environment claim concerns discriminatory conduct that "unreasonably interferes with an employee's work performance"). Once his cause of action accrued, the plaintiff was obligated to file a claim within the statutory time frame. See Wheatley v. American Tel. & Tel. Co., 418 Mass. 394, 397-398 (1994) (discrimination claim arose with notice of adverse action, not when plaintiff learned of improper motive underlying it). His failure to do so until 2019 was fatal to his pre-2016 claims, and those claims cannot be resuscitated by the continuing violation doctrine in the circumstances of this case. See Silvestris, 446 Mass. at 768-769.

7

c.  Claims based on 2016 termination of "employment."  The plaintiff also argues that the motion judge erred by granting summary judgment on claims stemming from the 2016 termination of his honorary staff designation and teaching privileges at HMS. He contends that there was a disputed issue of material fact regarding whether he was "employed" within the meaning of G. L. c. 151B between 2011 and 2016.  We need not and do not reach the issue whether the plaintiff's status while he maintained an honorary affiliation with the defendants constituted "employment" under c. 151B, however, because we conclude that he failed to establish that he was a "qualified handicapped person" after taking LTD leave in 2011.

Under G. L. c. 151B, § 4 (16), a claim of employment discrimination based on disability requires proof that an employee is a "qualified handicapped person" capable of performing essential job functions of his job, either with or without a reasonable accommodation.  See Godfrey v. Globe Newspaper Co., 457 Mass. 113, 120 (2010).  A "qualified handicapped person" is one "who is capable of performing the essential functions of a particular job, or who would be capable . . . with reasonable accommodation to his handicap."  G. L. c. 151B, § 1 (16).  Here, the plaintiff presented no evidence that he requested an accommodation or otherwise sought to return to work as a practicing anesthesiologist after he began

8

receiving LTD benefits in July 2011. To the contrary, in his LTD benefit application, the plaintiff stated that he was unable to perform the essential functions of his position even with the accommodation he previously had sought. Where there was no evidence that the plaintiff could perform the essential functions of an attending anesthesiologist, even with a reasonable accommodation, summary judgment was proper. See Godfrey, supra at 125 (summary judgment properly granted where plaintiff unable to perform essential job duties, with or without reasonable accommodation).

3. Other claims. a. Interference with contract and business relations. In support of his argument that summary judgment was improper on the claims of interference with contract and business relations, the plaintiff contends only that "viewed in the light most favorable to [him], the facts alleged plausibly support either or both theories."

To sustain his claim of tortious interference with a contract, the plaintiff was required to provide evidence that (1) he had a contract with a third party; (2) the defendants knowingly induced the third party to break that contract; (3) the defendants' interference, in addition to being intentional, was improper in motive or means; and (4) he was harmed by the defendants' actions. See Psy-Ed Corp. v. Klein, 459 Mass 697, 715-716 (2011). Similarly, to survive summary

9

judgment on his claim of tortious interference with business relations, the plaintiff was required to show (1) he had a business relationship or contemplated contract of economic benefit with a third party; (2) the defendants knew about the relationship; (3) the defendants interfered with the relationship through improper motive or means; and (4) he lost advantage as a direct result of the defendants' conduct. See Cavicchi v. Koski, 67 Mass. App. Ct. 654, 657 (2006).

We agree with the motion judge that there was no evidence of any financially beneficial contract or business relationship between the plaintiff and a third party. The affiliations the plaintiff identified in his complaint -- honorary staff privileges at BWH, academic appointment to HMS, and his relationship with Boston Children's Hospital -- were without compensation. The mere possibility of future paid engagements through networking that might have been made possible by maintaining an honorary or academic title did not constitute evidence of a contemplated contract of economic benefit necessary for the plaintiff to sustain his burden. See Owen v. Williams, 322 Mass. 356, 361-362 (1948).

b. Fraudulent and negligent misrepresentation. The plaintiff's fraudulent and negligent misrepresentation claims are premised on the assumption that after 2011 he was not employed by BWH and Partners. He contends that, to the extent

10

the defendants did not employ him, their "agents" misled him about his status when they knew or should have known their representations were false so that they could "benefit from his non-clinical services, which they obtained free of charge."

To withstand summary judgment for fraudulent misrepresentation, the plaintiff was required to produce evidence that (1) the defendants made a false representation of a material fact with knowledge of its falsity for the purpose of inducing him to act on it; (2) he relied upon the representation; and (3) he acted upon the representation to his damage. See Masingill v. EMC Corp., 449 Mass. 532, 540 (2007). The claim of negligent misrepresentation required proof that the defendants (1) in the course of their business; (2) supplied false information for the plaintiff's guidance; (3) in the plaintiff's business transactions; (4) causing and resulting in pecuniary loss to the plaintiff; (5) by his justifiable reliance upon the information; and (6) failed to exercise reasonable care in obtaining or communicating the information. See Savers Prop. & Cas. Ins. Co. v. Admiral Ins. Agency, Inc., 61 Mass. App. Ct. 158, 169 (2004).

The plaintiff produced no evidence demonstrating that any defendant explicitly represented to him or anyone else that he remained an employee after he went on LTD leave. The plaintiff's honorary staff title at BWH and academic appointment

11

at HMS did not, without more, constitute evidence of fraudulent or negligent misrepresentation of his employment status. In addition, the plaintiff failed to present evidence to support his assertion that any representations by BWH or Partners were made for the purpose of inducing him to act. We agree with the motion judge that there was "no indication that the [d]efendants were aware of any of [the plaintiff]'s purported opportunities or induced him to forego [them], through false representations or otherwise." Finally, the plaintiff's contention that he may have suffered economic loss based on his purported reliance on the belief that he remained an employee of BWH was nothing more than speculation.

c. Quantum meruit. To establish a prima facie case under a quantum meruit theory, the plaintiff was required to produce evidence that (1) he "conferred a measurable benefit upon the defendants"; (2) he "reasonably expected compensation from the defendants"; and (3) "the defendants accepted the benefit with the knowledge, actual or chargeable, of [the plaintiff's] reasonable expectation." Finard & Co., LLC v. SITT Asset Mgt., 79 Mass. App. Ct. 226, 229 (2011). The plaintiff asserts that, after he stopped receiving compensation from the defendants in 2011, BWH and Partners "actively advertised [his] expertise and used his connections to set up lectures which were of interest to large financial donors." He argues that his claim for

12

quantum meruit is supported "[t]o the extent that [the defendants] benefitted by his services by falsely fostering an expectation that he was and would remain an employee."  Even if the plaintiff's actions after he began receiving LTD benefits in July 2011 conferred a benefit upon the defendants, however, there was no record evidence that the plaintiff expected payment in return for activities associated with his honorary status or that the

defendants had any reason to believe he anticipated such compensation.

Judgment affirmed.

By the Court (Grant,
  Brennan & Toone, JJ.[6]),

_Paul Little_

Clerk

Entered:  May 19, 2025.

---

[6] The panelists are listed in order of seniority.